[No. 477.   January 6, 1892.]

# EVA DALY, Appellee, v. HERMAN BERNSTEIN, Appellant.

CONTRACT FOR SALE OF LAND—ASSUMPSIT—RESCISSION.—On the rescission of a contract, under seal, for the sale of land, an action of assumpsit will lie to recover the purchase money paid under the contract, and the contract, though under seal, is admissible in evidence, in such action, to show what was paid upon it before its rescission, and when and how paid.

ID.—DEFECT OF TITLE—FAILURE OF VENDEE TO EXAMINE—RESCISSION—ESTOPPEL—FRAUDULENT REPRESENTATIONS OF VENDOR.—In such action, the vendee is not estopped from rescinding the contract, on the ground of a defect in the title to the land, by the fact of having failed to examine the records of title before closing the contract, where such an examination would not have disclosed the defect; and, under such circumstances, may rely upon the representations of the vendor or his agent.

ID.—FRAUDULENT REPRESENTATIONS — MERGER — DAMAGES.—Where, in such case, it was contended by defendant that the alleged fraudulent representations were merged in the contract, and that if there were any damages, by reason of the same, the plaintiff must assert his right to such damages in an action upon the contract, and not by an independent action like that pursued for the recovery of the purchase money, the contention was not well founded, the contract sued on being an executory contract to sell and to execute a warranty at a future day, and not a contract by deed executed with covenant of absolute warranty for breach of which an action might be maintained for damages.

ID.—RESCISSION—RENT—RULE IN STATU QUO.—Where, in such case, it was further contended by defendant that, though the representations made may have been false, plaintiff could not sustain the action, there having been no rescission of the contract as a matter of law, the plaintiff and vendee not having placed the vendor in statu quo, plaintiff being in default in the payment of part of the rent, and it appeared that at the time of the inception of the contract the defendant and vendor had merely the possession of the property, that the vendee on the rescission of the contract vacated the premises and returned or offered to return the keys to the vendor, and that the vendor had received and had the money of the vendee paid on the contract representing fully the rental value of the premises, under

such circumstances the vendee placed the vendor in statu quo by returning to him merely what had been received from him,—the possession of the premises; the title having been in the vendee, who, as the rightful owner, was alone entitled to the rental value.

ID.—TRUST DEED, ACCEPTANCE OF BY TRUSTEE—EVIDENCE.—Where it appeared in evidence, in such case, that at one time the title to the premises was in another, and such other person made a deed to the property, creating a trust providing for the trustee's acceptance by signing the deed, but he never signed it, the occupation of the premises so conveyed and the possession of the deed by the trustee were sufficient to show his acceptance.

ID.—TRUST DEED WITHOUT WORDS OF INHERITANCE—EVIDENCE—PRESUMPTION.—Where it further appeared from the deed in evidence, in such case, that it contained no words of inheritance, it did not convey a fee; and it will not be presumed, in the absence of any evidence to show that the creation of a fee was necessary to sustain the purposes of the trust, that such an estate was contemplated.

ID.—LOST DEED—ADMISSIBILITY OF PROOF OF CONTENTS.—Evidence of the contents of a deed alleged to have been lost is not admissible, where it is denied that such instrument ever existed, unless it be shown by the party offering such evidence that he has used the utmost diligence to find and produce the original; the very existence of the instrument itself being in question, ordinary diligence would not be sufficient.

ID.—FAILURE OF TITLE—CLAIM OF ADVERSE POSSESSION.—Where a person alleges title to land under a lost deed, which he fails to establish, he will not be permitted to set up a defense of adverse possession for a period sufficient to fix the title in himself.

ID.—TRIAL—INTERLINEATION OF INSTRUCTIONS.—Where, on the trial of a cause, instructions given are interlined, no error will be presumed where none is shown affirmatively, the statute forbidding such interlineations being directory merely, and not mandatory.

APPEAL, from a judgment in favor of plaintiff, from the Second Judicial District Court, Bernalillo County. Judgment affirmed.

The facts are stated in the opinion of the court.

WARREN, FERGUSSON & BRUNER for appellant.

Where the burden of proof is on plaintiff, and his evidence is such that a verdict for him would be set

aside, the court should direct a verdict for defendant. Randall v. B. & O. R'y Co., 109 U. S. 478; Pence v. Langdon, 99 U. S. 578; Scofield v. Railroad Co., 114 Id. 615.

Recovery upon the common counts in assumpsit can not be had for money paid upon a special contract which has been in part performed, and the plaintiff has derived some benefit, and the parties will not be placed in statu quo. 1 Chitty, Pl. 355, and notes; Chitty on Contracts [6 Am. Ed.], 622, 741, 743, and notes; 5 East, 549; 1 New. Rep. 260; Londregon v. Crowley, 12 Conn. 563; Miller v. Watson, 4 Wend. 267; 7 East, 274; Hudson v. Swift, 20 Johns. 85; Eams v. Savage, 14 Mass. 425.

The alleged fraudulent representations of defendant were merged in the contract, and plaintiff was remitted to her remedy upon that contract. Andrews v. St. Louis Smelting and Refining Co., 9 Sup. Ct. Rep. 646; Farrar v. Churchill, 10 Sup. Ct. Rep. 773.

A vendee can not rescind a contract of purchase of land, under which possession is given and partial payments made, without any eviction or disturbance of possession, while he is in default in his payments, and makes no offer or tender of payment of the balance of purchase money; and the time for performance of the contract by the vendor has not arrived, and he claims the ability and willingness to perform at the time and in the manner required by the contract. Hudson v. Swift, 20 Johns. 85; Eames v. Dev. Germania, 8 Brad. (Ill.) 663; Sage v. Ranney, 2 Wend. 532; Johnson v. Evans, 50 Am. Dec. 669, and note, and cases cited; Bryant v. Isburgh, 74 Id. 655, and note, and cases cited; Gale v. Green, 12 Id. 548; Hynson v. Dunn, 41 Id. 100; Duncan v. Jeter, 39 Id. 342.

Plaintiff did not pay or account for the use and occupancy of the premises, nor offer to do so before bringing suit. In order to rescind a contract it is neces-

sary to return or to offer to return, all benefits received under it, before a right of action accrues.   Guy v. Alter, 102 U. S. 79; Scott's Ex'r v. Barber's Ex'r, 14 Ohio, 547; Andrews v. Hensler, 6 Wall. 255; Underwood v. West, 52 Ill. 397; 2 Parsons on Contracts, p. 679, and note.

The deed from Apodaca to Vow was for a valuable consideration recited as paid; and if it were admitted that defendant's sole title was derived under that deed, it was sufficient, by proper legal construction, to convey the fee, notwithstanding the omission of the technical word "heirs."   Young v. Bradley 101 U. S. 782.

The court erred in refusing to admit testimony of the existence of the lost deed, and secondary evidence of its contents.   Stephens Dig. Law Ev., p. 136, note 2; Stebbens v. Duncan, 108 U. S. 32.

NEILL B. FIELD for appellee.

The bill of exceptions should be stricken out because not filed in time. T., S. F. & N. R'y Co. v. Saxton, 3 N. M. (Gil.) 443; Evans v. Baggs, 4 N. M. (Gil.) 67; Jennison v. Boose, Id. 71.

Assumpsit was the proper form of action.   Baston v. Clifford, 68 Ill. 68; 1 Chitty, Pl. 355; Martin v. Howil, 3 Brev. (S. C.) 547; Huckson v. Arant, 2 Id. 264; Stevens v. Lyford, 7 N. H. 360; Luey v. Bundey, 9 Id. 298; Richards v. Allen, 17 Me.; Doherty v. Dolan, 65 Id. 87; Keyes v. Harwood, 2 C. D. 905; Planche v. Colburn, 8 Bing. 14; Reddington v. Henry, 48 N. H. 273.

The plaintiff had the right to rely upon the representations of Alexander as to the state of the title, and, if those representations were false, she had the right, so long as the contract remained executory, to rescind and recover the amount paid by her upon the faith of those representations.   Thomas v. People, 113 Ill. 531.

Alexander's representations were false in law, having admitted he had never examined. the record. Fisher v. Mellen, 103 Mass. 503; Litchfield v. Hutchinson, 117 Id. 195; 8 Am. and Eng. Encyclopedia, 801, note 8, and cases cited.

Where the grantee shows the grantor had no title, he is entitled to a return of any consideration paid for the land, without first showing that he has been evicted. Johnson v. Powell, 34 Tex. 528; Morrow v. Reese, 69 Pa. St. 373; 37 Tex. 674; Thomas v. Coultas, 76 Ill. 437.

A person bound by an executory contract to purchase land need not fulfill his contract if there is a cloud on the title. The defect need not consist of an outstanding title, which is necessarily a paramount title. Estell v. Cole, 62 Tex. 695; Diggs v. Kirby, 40 Ark. 420; Taft v. Kessel, 16 Wis. 292. See, also, Lithbridge v. Kirkham, 25 L. J. (N. S.) 2 B. 89; Clove v. Moore, 3 Jur. (U. S.) 48.

For cases where the purchaser of real estate may maintain an action to recover back money paid under the contract of purchase, where the contract has been rescinded, see Baston v. Clifford, 68 Ill. 68; Bitzer v. Orban, 88 Ill. 130.

The purchaser under an executory contract for the sale of land has the right to demand a perfect title. Cooper v. Singleton, 19 Tex. 260; Rawle, Cov. for Title, 41, 42, 565.

The children of Apodaca, who survive him, and the heirs of those dead, have an estate in the land in question, which constitutes a serious defect in defendant's title. 2 Wash. Real Prop. 538, et seq.; Williams, Real Prop., 242, et seq.

No witness qualified to testify as to the contents of the instrument (if it were admitted that a proper foundation was laid) was produced by defendant. 2 Cowan & Hill's Notes to Phil. on Ev. 1214–1220; McRey-

nolds v. McCord, 6 Watts (Pa.), 288; McCreedy v.
Navigation Co., 3 Whar. (Pa.) 424; Den v. Pond,
1 N. J. Law, 379; Kimball v. Morrill, 4 Me. 369;
Jackson v. Frier, 16 Johns. 193.

There is no evidence tending to prove title by
adverse possession, and if there was such evidence, it
was properly excluded. 2 Perry on Trusts, sec. 863,
864.

The instructions fairly submitted the law of the
case, and it devolves upon the appellant to point out
wherein the court below erred in the instructions.
Blaydes v. Adams, 45 Mo. App. 526; Fletcher v. Mil-
burne Mfg. Co., Id. 321; Mo. Pac. R'y Co. v. Schoen-
nen, 37 Id. 612; Symington v. Rohn, 23 Pac. Rep.
86; Dosenback v. Raymer, 22 Id. 787.

There is nothing in the record by which the ver-
dict can be impeached, nor is there anything in the
suggestion that the verdict was excessive. Proffat on
Jury Trial, sec. 414; Haycock, Adm'r, v. Greup, 57
Pa. St. 438.

SEEDS, J.—This is an action in assumpsit upon the
common counts simply, to recover the purchase money
upon a contract under seal for the sale of land. The
defendant pleaded the general issue. To prove her
case, the plaintiff introduced evidence to the effect that
the defendant, by his agent, had represented the title
to the premises to be perfect, and that she had pur-
chased relying upon such representations, but that, in
truth and fact, such representations were fraudulent.
She introduced a contract of sale to prove its terms,
and the amount she had paid on the same. The
defendant objected to this evidence, upon the ground
that the contract was sealed, and, as this was an action
in assumpsit, it could not be received as evidence, as
it could only be material and relevant in an action of
covenant. (1) The plaintiff claimed that the contract

was rescinded because of the false representations as to the title. In proving that the title was bad, the plaintiff introduced a "trust deed," so-called, from one Apodaca to Julian Vow, through whom the title devolved upon the defendant, which trust deed passed the title to Vow for specific purposes solely, not in any sense requiring that he should possess the fee. And she contends that when the trust deed was executed, all right and interest to the land passed again to Apodaca, and that Vow had no interest in the property which he could pass to the grantors of the defendant. That at Apodaca's death the property went to his heirs, and that, as the defendant did not possess the interests of all those heirs, his title was not good, as he had represented. The record, in the recorder's office of Bernalillo county would have shown this title to be imperfect. The defendant contended that the plaintiff could have consulted, and that it was her duty to so have done, the records of the county recorder, and that she would there have found that the title was imperfect, and, as she has failed so to do, she can not now complain. (2) That the title was good under the so-called "trust deed," as it in law passed to Vow a fee. That, at least, there was afterward a good warranty deed given to Vow by Apodaca and wife to cure any defects which might have been in Vow's title, but that that deed was lost. The court heard evidence upon the loss of this alleged deed, and of the diligence used in searching for it, and upon its execution, and thereupon refused to allow evidence of its contents to be given. (3) That the man Vow had title to the land in controversy by adverse possession. The court refused to allow evidence of this claim to be given. (4) Then, under the contract for sale of the property in controversy, the defendant was under no legal obligation to make a good title until the last payment by the plaintiff, and that, as that time had not come,

the plaintiff could not rescind the contract; at least, not until she had placed the defendant in statu quo, and was not in default herself under any of the requirements of the contract. That she was in default in the payment of one or two installments under the contract, and that she had not offered to pay the defendant for the fourteen months use of the place when she attempted to rescind the contract; therefore he had not been placed in statu quo. There was a trial to a jury. Instructions given and refused. Some of the instructions asked to be given by the defendant were interlined by the court before they were given. Verdict for the plaintiff. Motion for a new trial, which was overruled. Judgment upon verdict for plaintiff, and the defendant appeals.

The defendant makes forty assignments of error, but it is unnecessary, for a proper decision of this case, to consider all of them. We will consider only those which it seems to us fairly and correctly meet all the questions raised by the record.

1. It is insisted that, as this is an action in assumpsit, the contract for the sale of the land ought not to have been admitted in evidence, as it was under seal. This proposition would hold good if the contract had been introduced for the purpose of recovering under the terms of that instrument and for the breach of its covenants. Then the action should have been by covenant. Chit. Pl. 115; 4 Am. & Eng. Encyclopedia of Law, 464. But it is contended in this case that the contract was rescinded. It is upon this theory that the plaintiff has proceeded. If this theory is correct, then plainly, as the defendant has received from the plaintiff money upon a contract which has now no existence, and as she has received no equivalent for her property, she is entitled to have it refunded. She certainly can not recover it under any of the terms of the land contract, for under her theory there is no such contract.

Under such circumstances, where one becomes pos-
sessed of another's money by force of the terms of a
contract which have failed, he holds the money for the
use of that person, and, upon failing to redeliver it, may
be made to respond in damages by the action of as-
sumpsit. 7 Lawson, Rights, Rem. & Pr., sec. 3691; 1
Chit. Pl. 155. It was, then, clearly proper to admit the
contract in evidence under this form of action, to prove
how, when, and what amount had been paid upon it
before it was rescinded.

2. It is insisted that, if there were any fraudulent
representations, this plaintiff can not take advantage

CONTRACT for
sale of land:
rescission.

of them to rescind the contract, for she had
the opportunity to ascertain their character
at hand, and, if she failed to avail herself of that
opportunity, she can not complain. Her testimony was
to the effect that the agent of this defendant—who was
the active person in the whole transaction—represented
to her that the title to the land was perfect in the de-
fendant, Bernstein, and went back without a flaw to a
legal Spanish grant; that she relied upon these repre-
sentations, and purchased accordingly; that in fact the
title was not perfect; and that the defendant had no
title to the land. The agent testified that he did rep-
resent the title as good, but told the plaintiff that she
should go to the records in the recorder's office and see
for herself. This she did not do, though she lived in
the town where the records were, and had she done so
she would have found the defect in the title which was
complained of. The agent had never looked at the
record title, and did not know what was its character.
As to whether there were representations, whether they
were false or not, and whether this plaintiff relied upon
them solely in entering into this contract, were ques-
tions for the jury, under proper instructions from the
court. Now, under the first instruction given by the
court, the jury were told that, if they found that the

facts were as above stated, they should find the issues for the plaintiff. To this the defendant excepts, alleging that the plaintiff was not authorized to rely upon such oral statements. As we undertand the objection, it is that, as she had the opportunity to search the records herself, she should not have relied upon the defendant's representations. If the representations made by the agent were as to material facts, and were not matters of opinion merely, and were not true, even though he may have thought them so, and he made them to the plaintiff with the intention that she should believe them, and upon such belief should purchase the property, and she did rely upon them, and did so purchase the property, then clearly she is legally entitled to rescind the contract so long as it is executory, at least, and sue for the purchase money paid by her, unless she has forfeited that right by failing to first consult the records herself. 5 Lawson, Rights, Rem. & Pr., secs. 2342, 2352, and notes; 8 Am. & Eng. Encyclopedia of Law, 841, and note 8. The general principle of law in reference to fraudulent representations made in purchasing property is that if the truth can be ascertained by the purchaser by the use of ordinary diligence, and he fails to avail himself of the results of such diligence, then the false representations are not actionable. 8 Am. & Eng. Encyclopedia of Law, 803; Hamlock v. Fairbanks, 46 Wis. 415.

The contention on the part of the defendant is that under this rule of law the plaintiff is estopped from saying that she was misled by the false representations of the agent. The records were near at hand. She had the ability and the right to consult them. If she had done so, she would have found that the title was not good as shown by the records. It is, however, apparent that the law which should govern in this case must be general. The question is: Does a record of title provided for by the

government furnish such knowledge of the actual state of the title as to make it incumbent upon all purchasers to consult that source of knowledge before purchasing, or to suffer from so failing should the title prove defective, although the vendor represented the title to be good? In other words, is the presence of a record title kept by the government so potent as a notice as to relieve the vendor from the need of making representations, and are those representations valueless if made? To that position must this contention come. Now, the fact is that a government record is not necessarily true. In this very case, if the claim of the defendant in regard to the lost deed is true, then the record in the recorder's office is not true, for the alleged lost deed is not of record, and, even though the plaintiff had sought out the record, she would either have had to throw up the bargain, or to rely upon the representations of the defendant as to the actual title. As a matter of fact, the record title kept by the government has but one purpose,—to protect innocent purchasers who may buy with simply the knowledge of the record, either actual or constructive. Such a record does not have for its purpose the protection of a vendor who may fraudulently sell the property to a party, even though that party might have found by the record that the title was imperfect. We do not think it was ever intended to prevent vendors from stating the actual fact, or assuming to, and allowing the vendee to rely upon those representations. If the record in this case did not state the fact as to the title, why should not the plaintiff rely upon the representations of the defendant, and if they are false, and she, relying upon them, and they being material, is injured, why ought she not to have her damages? If the record is not true, and does not pretend to be absolutely, why should a person seek out that for information which can not give them the facts as truly as the one claiming the

title? It seems to us that by no ordinary diligence which the plaintiff was in law called upon to use could she have found out the actual truth as to the title, and that she might legally then have relied upon the representations of the defendant. The instruction given, therefore, was correct.

There is a proposition urged by the defendant under this head which should be adverted to. It is FRAUDULENT that the alleged fraudulent statements representations: were merged in the contract, and, if there merger: damages. were any damages by reason of the same, then it must be asserted in an action upon the contract, and not in an independent action like the one before us. As sustaining this contention, he cites Andrus v. St. Louis Smelting Co., 130 U. S. 643, and Farrar v. Churchill, 135 U. S. 609. The last case cites approvingly the first one. If this position is sound, then, without question, the lower court erred in sustaining this action in assumpsit. However, the principles enunciated in those two cases must be understood, as in every case, as referring to the facts in issue. In the case of Andrus v. St. Louis Smelting Co., the defendants had sold a lot in Leadville, Colorado, to the plaintiff and given him a deed of conveyance containing covenants that it was seized of an estate in fee simple; that they were clear of all liens and incumbrances; and that it would warrant and defend the grantee in their peaceable possession. Upon such a conveyance the court said: "The covenant in the deed for quiet possession merged all previous representations as to the possession, and limited the liability growing out of them. * * * The covenant was an affirmance of those statements in a form admitting of no misunderstanding. * * * But where the vendor executes a conveyance to the purchaser, with a warranty of title and covenant for peaceable possession, his previous representations as to the validity of his title, or the

right of possession which it gives, are regarded, however highly colored, as mere expressions of confidence in his title, and are merged in the warranty and covenant, which determine the extent of his liability." Pages 647–649, 130 U. S.   In the case of Farrar v. Churchill, supra, this last case was approved, and it was said that the contract had ceased to be executory, and hence, even for fraud, could not be lightly brushed aside.   In each of these cases the actions were for damages for fraudulent representations.   As distinguishing these cases from the one before us, it is noticeable that the contract in each was an absolute warranty deed and executed.   The contract in this case was to sell and to execute a warranty deed in the future.   It was an executory contract.   What covenant was there in it upon which this plaintiff could sue for false representations, as being merged in it?   Was it the covenant to sell?   Had he not sold?   Did not he give possession?   If, then, he had falsely represented the title, how can it be said that the plaintiff could have recovered damages under this covenant which was executed and not broken?   There is but one other covenant, and that is where he agrees to execute and deliver a warranty deed.   Has he not fulfilled this covenant when he makes such a deed and delivers it?   Then while the warranty in that deed, when made, might be the basis for an action if the title was bad, and all false representations might be merged in that, surely this plaintiff is not bound to go on paying money upon a contract which she was induced to enter into by fraud, until she could demand a warranty deed, and only then recover upon the covenant in the new contract.   If the cases cited are in point, then some covenant in the contract before us must be cited into which the false representations are merged, and by reason of which that covenant is or will be broken.   There is none, for this is an executory contract.   The covenants

in it could all be fulfilled, though the title had been falsely represented to be good.

3.  It is further contended by the defendant that, even though there may have been false representations, RESCISSION: rent: that the plaintiff could not sustain this rule in statu quo. action, for there had been no rescinding of the contract as a matter of law, as the plaintiff had not placed the vendor in statu quo, and she was herself in default in the payment of some of the installments upon the contract. It is the general rule that contracts may be rescinded when the entering into them has been induced by fraudulent representations as to material facts actually relied upon and inducing the contract, when the parties can be placed in statu quo. 3 Am. & Eng. Encyclopedia of Law, 929. Also: "It is well settled that a purchaser under an executory contract calling for a good title will not be required to complete the purchase if the title fails.  *  *  *  As a general rule, a party rescinding a contract must restore what he acquired under it.  He must place the other party in statu quo; and this seems to be a condition precedent to the right to maintain an action founded upon such rescission." Taft v. Kessel, 16 Wis. 291, 296.

The evidence in this case shows that the plaintiff delivered, or offered to deliver, the keys of the premises to the defendant, and vacated the place. It is contended, however, that the other party, here the defendant, should have been paid the rental value of the place for the time that the plaintiff occupied it, and that he was not in statu quo until this was done. This raises a nice question. "In statu quo" means being placed in the same position in which a party was at the time of the inception of the contract which is sought to be rescinded. Now, at that time the defendant had merely the possession of the place. If the jury believed the testimony, that was delivered to him, and hence

he was in statu quo. It will be contended, however, that what he really possessed at the time of the contract was the possession of the premises, and the possibility of the rental value for the time which the plaintiff held it, and that the latter has not been returned. On the other hand, he has been in possession of the money of the plaintiff, which represents fully that rental value. If that value belongs to the defendant he has it, and he could have pleaded a set-off and recovered it. As a matter of fact, the court instructed the jury to allow for the same; and if this was a proper instruction, as there was no set-off pleaded, that instruction must have been predicated upon the ground that in law the rental value was tendered and paid in the purchase money. Why should the plaintiff be called upon, before suing for what has wrongfully been taken from her, to pay over to the party who has deceived her yet more money as a condition precedent, when the law gives the vendor the right to plead a set-off and recover what is due him from the moneys actually in his hands? Supposing the defendant financially worthless, the practical operation of the contention here would be, to use a general principle of law, to enlarge the gains of one whose wrong has already deprived the vendee of her money. It may be said that the plaintiff would have a lien for the money upon the land in question. But that is the fatal error in the defendant's case—the title is not in the defendant. Upon that allegation the case rests; and the plaintiff gains her case only by substantiating it. If, then, the title is not in the defendant, then has he any right to the rental value? Is not the plaintiff holden to the rightful owner of the fee for that rental value? If she is, then certainly she has placed the defendant in statu quo when she gives him what she received from him—the bare possession. We do not wish to be understood as holding that as a legal proposition, good in all cases, upon failure of title in a con-

tract for sale of land, the vendor is placed in statu quo
by the simple return of the possession of the land, but
only that, under the peculiar circumstances of this
case, that was all that was required.  While a party
must not be in default himself when he seeks to rescind
a contract, yet in this case it would have been absurd
for the plaintiff to have paid further installments upon
a contract which she knew was guarantying her no
protection, especially as there was an attempt on the
part of the defendant to correct the defect in the title
before she rescinded the contract, and there is no
showing that the default was not caused by the plaintiff
waiting to see if this defendant could correct the title.
It is not, however, the invariable rule that the vendee
should place the vendor in statu quo before bringing
an action for the purchase money.  But it is held that
a contract may be rescinded for fraudulent representa-
tions of the vendor's title, or where it is necessary for
the protection and indemnity of the vendee, and the
action may be brought for the money paid before
restoring possession.  Taft v. Kessel, 16 Wis. 291,
297.  The principle therein enunciated applies in this
case.

4. It is further contended that the plaintiff has not
proven that the title was bad.  The evidence goes to
TRUST deed, ac- show that at one time the title was in one
ceptance of by Apodaca.  He made a deed of trust, so-
trustee: evi-
dence. called, to his son-in-law, Julian Vow.
The deed declares that "whereas, the said Juan
Apodaca and wife are desirous that their said grand-
children should enjoy the proceeds, rent, issues, and
income of the real estate," he grants the same to Vow
for that purpose.  Vow was to pay the expenses of the
premises out of the above issues also.  There were no
terms of inheritance, such as heirs, used in the deed.
There was provision made for the said Vow to accept
the trust by signing the deed.  This he never did.

But he occupied the place, and by the testimony of his own son, one of the defendant's witnesses, he had the deed in his possession. We think that this was sufficient to show that he accepted the trust without his signing the deed, and that he held under the deed, in absence of any other testimony as to a conveyance giving him a paramount claim to the fee. It is through this deed that the defendant's title is to be traced; he having the deed founded upon one from Julian Vow and wife. Did this trust deed pass the fee to Julian Vow? This is the contention of the defendant, and he bases that claim upon the law of the case of Young v. Bradley, 101 U. S. 782. In that case a devise was made to certain trustees and their successors to carry out the provisions of a will. A sale was made of some of the property by the trustees. After that, parties who were beneficially interested under the will should have entered into its full enjoyment. The devisee sued for the land thus sold, and the defendant insisted that, the legal title being in the trustee, he had a right to sell the property. The court decided otherwise. We think that the case fails to sustain the point contended for. The court quotes approvingly from Perry on Trusts: "(1) Whenever a trust is created, a legal estate sufficient for the purpose of the trust shall, if possible, be implied in the trustee, whatever may be the limitations in the instrument, whether to him and his heirs or not. (2) Although a legal estate may be limited to a trustee to the fullest extent, as to him and his heirs, yet it shall not be carried further than the complete execution of the trust necessarily requires." Perry, Trusts, sec. 312. Again he says: "The general rule is that, whether words of inheritance in the trustee are or are not in the deed, the trustee will take an estate adequate to the execution of the trust, and no more or less." Section 320. To the same effect,

2 Washb. Real Prop. *186, *187. While, then, if the intention had been to pass a fee if it had been necessary to sustain the trust in Vow, such an

<span style="float:left">TRUST deed without words of inheritance: evidence: presumption.</span> estate would have passed without the word "heirs" or its equivalent; yet where such an estate is not required, and where the absence of words of inheritance would raise a presumption that no such an estate was contemplated, we can not presume one to protect parties who are claiming under the larger estate. It may be urged that it was possible for the execution of the trust that a fee might have been required, for Vow might have died before the children had grown to manhood. However, the presumption would certainly be the other way, and it was incumbent upon the defendant to show that a fee was necessary. This he failed to do. We think that Julian Vow had no fee in the estate which he could convey, and that, therefore, the title claimed through him was clearly bad.

5. Fearing that his title would not sustain his claim, the defendant alleged that there was a subsequent deed from Apodaca and wife to

<span style="float:left">LOST deed: admissibility of proof of contents.</span> Vow for this property, which was a straight warranty deed. That Vow had the deed, but it had been lost, and after search it could not be found. He introduced testimony of the loss, and then sought to introduce oral proof of the contents of the instrument. This the court refused to allow, upon the ground that the evidence was not sufficient to prove the loss, and that its execution was not proven. "Before defendant should be permitted to give secondary evidence of its contents, it should prove that it had exercised the utmost diligence to procure the original." Wiseman v. Northern Pacific Railway Co., 26 Pac. Rep. (Ore.) 272. The question as to whether the loss of the instrument has been sufficiently proved to admit secondary evidence is to be determined by the court.

1 Greenl. Ev., sec. 558. This same author, in the section last quoted, lays it down that the diligence shown in the search must depend upon varying circumstances. We think that when the very existence of the instrument is denied, and the law, in the first place, requires the instrument to be in writing, the diligence shown ought to be of the highest character, before secondary evidence of the contents of the lost instrument should be allowed. The danger of the introduction of manufactured evidence is extremely great in such a case, and hence the party seeking to build up a defense upon such an instrument as in this case must use the utmost diligence. We have read carefully and often the evidence in this case, and are impressed with the idea that the defendant has failed to show such diligence as the law requires.

6. The defendant endeavored to set up the defense of adverse possession in the man Vow for a period long enough to anchor the title in himself.

FAILURE of title: claim of adverse possession. This the court refused to allow to be proved, and we think rightly. While inconsistent defenses are allowable under certain circumstances, we think it neither just nor proper to base a claim upon a paper title, insisting in good faith, as we presume in this case it was done, that that gives him his rights, and then, for fear it may fail, endeavor to come in upon an adverse claim. If he took under the trust deed (and he had it in his possession), he could not claim adversely to it; and hence all testimony looking to an adverse title in contradiction of that deed was rightfully rejected. If he had another title—a warranty deed—certainly he could not nor would not claim adverse to that; and all evidence as to his claiming the premises as his own would apply to one or the other of those two paper titles, and it would be presumed to have one or the other of them for its founda-

tion, and hence that evidence would be immaterial, as the paper title would be the better evidence.

7. Finally, it is urged that there was error in the court's interlining certain of the instructions asked by INTERLINEATION the defense, and given as interlined. The of instructions. statute forbids such interlineations, or erasures. But the statute is only directory, not mandatory, and no error will be presumed where none is shown affirmatively. Denver & R. G. Railway Co. v. Harris, 3 N. M. 109. The instructions fairly cover the points in issue, and meet the requirements of the case. After attentively studying the record, and the law as applicable to the questions raised upon it, we fail to find any error requiring us to reverse the case; hence the judgment of the lower court is affirmed.

O'BRIEN, C. J., and FREEMAN and McFIE, JJ., concur. LEE, J., who tried the case below, took no part in it in this court.