# CHARLESTON

TELLURIC COMPANY v. BRAMER *et al.*

Submitted March 23, 1915.   Decided April 13, 1915.

1.   LOST INSTRUMENTS—*Proof—Muniment of Title.*
     To establish or set up a lost instrument rising to the dignity and importance of a muniment of title, the evidence of its former existence, loss and contents must be clear, strong and conclusive.   (p. 189).

2.   SAME—*Weight of Evidence.*
     Circumstances casting doubt upon the existence of any of these essential elements will prevail over slight direct, oral evidence, though aided by corroborative facts.   (p. 189).

3. SAME—*Proof of Contents—Sufficiency.*

> The recollection of a very aged man as to the legal effect of a deed he claims to have executed more than twenty years before the date of his testimony, is insufficient to prove the contents thereof. (p. 190).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Harrison County.

Suit by the Telluric Company against John H. Bramer and others. From decree for defendants, plaintiff appeals.

*Affirmed.*

*Davis, Swartz & Templeman,* for appellant.

*Homer Strosnider,* for appellees.

POFFENBARGER, JUDGE:

On this appeal from a decree dismissing a bill filed for the purpose of establishing a lost deed for an interest in the oil and gas in a certain tract of land, numerous questions have been discussed. Substantially they are sufficiency of the evidence to prove the execution, contents and loss of the alleged deed and the defences of laches on the part of the plaintiff and bona fides of a purchase of the land since the alleged conveyance of the interests claimed.

The tract of land now yielding considerable quantities of oil is owned *prima facie* by the heirs of Mary E. Bramer in its entirety, and the plaintiff claims by virtue of the alleged lost deed one-half of the oil royalty and one-half of the gas royalty or rental. It is the aggregate of two tracts formerly owned by John H. Bramer, the husband of Mary E. Bramer, which tracts were conveyed to him as containing, respectively, 100 acres and two acres. In order to relieve himself of financial embarrassment, John H. Bramer, on January 17, 1890, conveyed these two tracts of land to James Monroe and Alford Rogers, for and in consideration of the sum of $1700.00, to be applied by the grantees, so far as might be necessary, to the discharge of the liens on the land which Bramer and his wife and family continued thereafter to occupy and use. On the 6th day of August 1894, Monroe and Rogers conveyed the land to Mary E. Bramer for and in con-

sideration of $1700.00, a portion of which, $557.00, was to be paid to Rogers on account of a note held by him and the balance applied upon the unpaid liens.

The purpose of the bill is to establish the execution of a deed by Monroe and Rogers to one W. S. Stevenson, conveying one-half of the oil royalty, the alleged equivalent of one-sixteenth of the oil in place, and one-half of the gas rental. If such a deed was executed, the purchase by Mary E. Bramer, if any, was subsequent thereto in date, and the bill alleges notice to her of the previous conveyance to Stevenson and charges the conveyance to her was made without consideration. It also alleges the conveyance to Monroe and Rogers was upon a trust to pay the indebtedness of John H. Bramer and that, upon the reduction of the indebtedness to such an extent as to relieve him from pressure, he had the land reconveyed to his wife. If Stevenson obtained such a deed as is claimed by the plaintiff, it was never recorded and its loss is fairly well established.

For some time before and after October 31, 1890, the date of the alleged deed, I. C. White, T. M. Jackson and W. S. Stevenson were engaged in the procurement of oil and gas leases of, and interests in, oil and gas lands in the counties of Monongalia, Harrison, Doddridge and Lewis, all of which leases and interests were subsequently conveyed to the Telluric Company, a corporation organized in March, 1891, practically all of the stock of which was owned by White, Jackson and Stevenson. Most of the leases and conveyances were taken in the name of Stevenson. On the 28th day of April, 1891, he executed a deed by which he transferred to the Telluric Company, all of the interests so acquired by him. In this deed, the several tracts of land in which the interests had been acquired were not specifically described. The leases and royalties were grouped in two schedules embodied in the deed, giving the names of the lessors and grantors, the counties in which the lands were, the dates of the conveyances and the acreages of the several tracts. In schedule No. 2, the interest sought to be established here was set out and described as follows: "Mary E. Bramer et als. Harrison, October 31, 1890, 200 acres."

On the organization of the Telluric Company, Stevenson

became its secretary and held that position until the time of his death in September 1903. From the records of the company or Stevenson's private papers, or both, reports, statements, and memoranda made by him have been produced. An expense account shows he had dinner and horse-feed at Bramer's, October 31, 1890. A paper purporting to be a list of leases and royalties, partly in the handwriting of Stevenson, contains this entry: "Mary E. Bramer et als. 1-16, Oct. 31, 90, 200, 500.00, all paid," under headings for dates, acres and cash. A paper in the handwriting of Stevenson and purporting to be a memorandum of conveyances and transfers for himself and others, including White and Jackson, to the Telluric Company, names Mary E. Bramer et als. as parties from whom royalties had been obtained and conveyed. This interest is mentioned in two additional papers of similar character, Mr. White has no recollection of ever having seen a deed from Monroe and Rogers, but he directed the purchase of a royalty interest in the Bramer land. He was the geologist of the co-partnership and Stevenson the field man, making purchases as directed. The books of the company and papers pertaining to the transactions show expenditures of several thousands of dollars, in the procurement of leases and purchases of royalties. Stevenson rendered a summary of his purchases, including seventeen royalties in Harrison County, costing $3108.50, and showing the total expenditures in the three counties of Monongalia, Harrison and Doddridge to have been $24,632.56 on account of which he acknowledged credit to the extent of $21,500.00. He also rendered an account of recording fees paid by him, including the cost of recording seventeen royalties in Harrison County. Mr. White thinks the Bramer purchase was one of the seventeen purchases included in the item of $3108.50. Stevenson carried with him a small memorandum book in which he noted the principal transactions and incidents of his field work. This record partakes largely of the nature of a diary, but it contains minutes of numerous business transactions. In it, appears the following entry: "Friday Oct. 31, 1890. Saw and traded with John H. Bramer, 200 acres, $500.00, 1-16. Dinner at Bramer's, Rogers signed, also saw George W. Williams and Alf W. drove to J. S. Pigott, with whom I got

supper and stayed.'' Monroe, one of the alleged grantors, is dead. Rogers, the other one is living and testified positively that such a deed as is claimed by the plaintiff was executed by himself and Monroe; but at the time of the giving of the testimony, he was ninety-five years old and the transaction to which he testified, if it ever occurred, took place nearly twenty-one years before the date of his testimony. His wife testified to her recollection of the transaction, as a matter of information from the parties thereto, but had never seen the deed nor joined in it. Both she and her husband say that, on the settlement between Monroe and Rogers, on the one hand, and the Bramers, on the other, and reconveyance of the land to Mrs. Bramer, the alleged purchase money was taken into account and credited. Rogers was unable to speak with certainty as to the place of the acknowledgment of the deed or the officer who took it.

As to the real character of the conveyances to Monroe and Rogers and back to Mrs. Bramer, there is conflict in the evidence. Rogers claims Mrs. Bramer paid nothing for the land and that her husabnd transacted the business with him and Monroe and partially repaid the money they had advanced in discharge of liens. In other words, the substance of his testimony is that they took the land upon a trust and, after having satisfied some of the liens and so relieved the financial pressure, reconveyed the land to Mrs. Bramer, at the instance and request of her husband who had in the mean time contracted other debts. On the other hand, John H. Bramer and his sons say Mrs. Bramer actually purchased and paid for the land. They exhibit a note for $410.00, payable to the Merchants National Bank of Clarksburg, executed by Alford Rogers, James Monroe and J. W. Monroe, and stamped as having been paid by Mary E. Bramer, and the note of Mary E. Bramer for $557.00 payable to Alford Rogers or order. They further say she borrowed $800.00 from a man by the name of Ramsburg, to secure which a deed of trust was given on the land, and paid it on the purchase, but their testimony as to the application of said sum is largely conjecture and supposition.

Practically all of the testimony submitted to the court on behalf of the plaintiff was excepted to in detail. Some of

the exceptions were sustained, but many of them were over-ruled. Most of them went to the competency of the witnesses, in view of the death of parties, and lack of identification of the documentary evidence. It would be a waste of time to review all of the rulings upon these exceptions, if the rejected evidence treated as admissible and considered upon this appeal is not sufficiently definite, certain and conclusive. To establish the execution of a lost deed or set up a lost muniment of title, the evidence must be strong, clear and conclusive of its former existence, its loss and its contents. *Board* v. *Callihan,* 33 W. Va. 209; *Barley et als.* v. *Byrd et als.,* 95 Va. 316; *Thomas* v. *Ribble,* 2 Va. Dec. 321; *Carter* v. *Wood,* 103 Va. 68; *Erskin* v. *Wilson,* 20 Tex. 77; *Swaine* v. *Maryott,* 28 N. J. Eq., 589. The following propositon enunciated in *Thomas* v. *Ribble,* cited, was approved and applied in *Carter* v. *Wood:* "Where the issue involves the existence and contents of a written paper, the doctrine seems to be well founded in principle that the greater the value of the instrument the more conclusive should be the proof of its existence and contents. And, where the instrument rises to the dignity and importance of a muniment of title, every principle of public policy demands that the proof of its former existence, its loss and its contents, should be strong and conclusive, before courts will establish a title by parol testimony to property which the law requires shall pass only by deed or will."

Only one of the many documents relied upon can be construed as containing any reference to a deed of conveyance to Stevenson and that is the deed from Stevenson to the Telluric Company, which enumerates several conveyances to him, including one from Mary E. Bramer et als. The other papers merely describe the interest claimed as being a royalty. None of them say it had been conveyed or make any mention of a deed. Only one witness, Alford Rogers, a man over ninety-five years old, testifying more than twenty years after the date of his alleged act, claims to have seen such a deed as is alleged. His wife did not join him in it nor did she ever see it. She knows only what she says she heard about it. According to her testimony, Rogers and Monroe did not get the money. It was paid to the Bramers. On this point, her husband is indefinite. Stevenson's note book says he spent

the night of October 31, 1890, at the residence of J. S. Pigott. Mrs. Rogers says he staid at her house that night. She and her husband are both flatly contradicted in several instances by the Bramers. Presumptively Monroe was thoroughly cognizant of the effect of the deeds he executed, for he was clerk of the county court of his county and frequently prepared deeds. About four years after October 31, 1890, he and Rogers executed a deed conveying the Bramer land to Mrs. Bramer, with a covenant of general warranty and without any exception of the alleged conveyance to Stevenson. The execution of the deed to Mary E. Bramer was virtually a settlement of their dealings with John H. Bramer. It occurred in a comparatively short time after the alleged conveyance to Stevenson, wherefore that transaction, if it actually occurred, likely did not escape their attention, and their failure to except any conveyance to him is highly inconsistent with the alleged previous act. An ordinary precaution against liability on the covenant of warranty would have been an exception of the interest conveyed to Stevenson. None of the documents specify any deed or conveyance from Monroe and Rogers. The references are to Mary E. Bramer et als. At the date of the alleged deed of conveyance, Mrs. Bramer had no title and the documents do not indicate who the other suggested parties were. A deed from her and her husband could not have been effective at that time. The memorandum in Stevenson's note book makes no mention of Monroe. It says a trade was made with John H. Bramer and that Rogers signed, but it does not say what he signed. He may have signed a mere executory contract or an option. He may have made a bargain which was never carried into execution. The documents in the form of memoranda made by Stevenson, giving the deed books and pages of the recordation of the muniments of title procured by him, except the one claimed to have been obtained from Mary E. Bramer et al. As to the recordation of it, the memoranda all stop short. Hence he must have known the deed, if any, had not been recorded. His silence for thirteen years casts doubt upon the existence of such a deed. The summary of his purchases called for seventeen royalties in Harrison County, costing $3108.50. His expense account for recordations likewise called for

seventeen royalties in Harrison County. In this there was probably no charge for the Bramer royalty, since it was not recorded. Hence there must have been seventeen without it, and the list of leases and royalties in that county prepared by him shows eighteen royalty interests. These circumstances cast doubt upon the question of payment of $500.00 on account of a royalty in the Bramer land, notwithstanding the memoranda produced. There is evidence tending to show that Jackson, the associate of Stevenson and White held a lease on the land at the date of the alleged execution of a deed, and the land was encumbered and its title in an unsettled condition. Under these circumstances, Stevenson may have paid the Bramers $500.00 on some sort of a contract, such as an extension or renewal of the lease, or for an option or a contract to be carried into a deed later and on the adjustment of matters pertaining to the Bramer title. Besides, the contents of the alleged instrument are not shown. Nobody attempts to give them in terms. Rogers says he and Monroe executed a deed for "an out and out sale for half the gas and half the oil." This expresses no more than a mere conclusion as to the legal effect of the paper he says he executed, and comes as a matter of memory of a transaction more than twenty years old. If a deed was executed and could be produced, it might not sustain this conclusion. Generally the proof of the contents of lost deeds goes beyond mere matter of recollection. The parol evidence as to contents is often aided by possession of the lands or a copy of the instrument. Such evidence as is offered here was emphatically rejected as being insufficient in *Board* v. *Callihan,* cited.

All the circumstances considered and the offered evidence treated as being admissible, without a declaration of its admissibility, we are of the opinion that the requisite degree of certainty and conclusiveness in the proof is not established, if all the evidence tendered were admitted. In view of this conclusion, the remaining questions discussed need not be considered.

The decree complained of will be affirmed.

*Affirmed.*