300 P.2d 480

J. C. WILLIAMS, T. S. Parks, J. W. Sabino and Parks Food Market, a Partnership, Plaintiffs-Appellees,

v.

P. D. MILLER, Mortis W. Smith and Miller and Smith, Contractors, a Partnership, Defendants-Appellants.

No. 6056.

Supreme Court of New Mexico.

July 25, 1956.

Rehearing Denied Aug. 27, 1956.

See also, 58 N.M. 472, 272 P.2d 676.

Moise & Sutin, Albuquerque, for appellants.

Rodey, Dickason, Sloan, Mims & Akin, Albuquerque, for appellees.

LUJAN, Justice.

On October 1, 1950, at approximately 1:30 o'clock in the morning, an explosion occurred in the commercial building of plaintiff-appellee J. C. Williams and leased by T. S. Parks and J. W. Sabino, plaintiffs-appellees, doing business under the name of Parks Food Store, resulting in the complete destruction of said building and its contents.

On December 31, 1952, appellees instituted this action against defendants-appellants, to recover the value of the building and its contents. According to the allegations of the complaint, on or about August 1, 1950, the appellants, by their agents and servants, negligently and carelessly dam-

aged the gas service line leading to J. C. Williams' building from the main along Harwood Avenue by wrenching the same with a backhoe, or ditcher, causing the same to leak. Appellees further alleged that, as a proximate and foreseeable consequence of the negligence of the appellants, their agents and servants aforesaid, an explosive quantity of gas was introduced into said building of plaintiffs on or about October 1, 1950, and became ignited, causing an explosion and fire which totally demolished said building and the contents therein.

The record discloses that the building in question was located at the S. E. corner of the intersection of North Fourth Street and Harwood Avenue in Albuquerque, New Mexico. It faced west on Fourth Street which runs north and south. Harwood Avenue runs east and west and is north of the premises. It was a dirt street fifty feet wide. The gas meter was at the rear and center of the building. From this meter a ¾ inch pipe, eighteen inches east of the foundation, ran north to the gas main on Harwood Avenue. There was a sewer service line parallel to this gas line, four feet back of the building, which was installed shortly after August 1, 1950. Prior to the installation of this service sewer line, appellees used a cesspool. The gas service line was between two and one-half and three feet deep at the connection in Harwood Avenue and about eighteen to twenty inches deep at the dresser coupling and the property line, and four to six inches above the footings of the building. The main gas line was about eight feet south of the north property line of Harwood Avenue.

In the building there was a walk-in meat box, two meat counters, a coca cola box, and an ice cream freezer. The meat cases were operated by two electric motors behind the partitions. They were one horsepower and uncovered. There were air conditioners on the windows. There was a space heater hung from the ceiling, a hot water heater, and a two burner hot plate. They were all connected with a gas line from the meter. The gas line up to the space heater was hung by plumbing tape.

The case was tried by a jury which returned a verdict in favor of appellees. From a judgment predicated upon the verdict the appellants appealed.

The case was prosecuted by appellees on the theory that the explosion which occurred in the building in question was caused by gas which seeped from a leak in the dresser coupling of the service line and which found its way through sandy soil into the building through cracks in the floor and there ignited by a spark from the electric motors.

Appellants' theory was that the explosion was not caused by any seepage of gas from the dresser coupling of the service line but that the explosion was caused by gas seeping through a defective gas pipe line which was connected to the space heat-

er and ignited by a spark from the electric motor used in the building.

Under point two appellants contend that the court erred in refusing to allow in evidence proof of the amount of gas which flowed through plaintiffs' meter on the night of the explosion. We agree with this contention.

They proposed to lay a proper foundation for the introduction of secondary evidence by offering to prove by J. C. Randolph, the supervisor or manager of the record department of Southern Union Gas Company that he had made a search of the records of the company to locate the meter readings as of October 1, 1950, the date of the explosion, but was unable to find the same in his office or anywhere within his control. On objection made by appellee the court refused to receive any evidence on this phase of the case. This was error. Nu Car Carriers, Inc., v. Traynor, 75 U.S. App.D.C. 174, 125 F.2d 47.

Where it is sought to prove the contents of any writing or business record by secondary evidence, a preliminary inquiry should be presented to the trial court as to whether the party offering such secondary evidence has, in good faith, exhausted, to a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. See, Jones on Evidence, 2d Ed., Vol. 2, § 818.

Thereafter appellants offered to prove by E. M. Perry and Clarence B. Folsom, Jr., both of whom had seen the meter readings for the day of the explosion, at the office of the Southern Union Gas Company, that 593 cubic feet of gas, an explosive mixture, had gone through the meter into the building between eight o'clock the night of September 30, 1950 and one thirty o'clock the morning of October 1, 1950, and was ignited by a spark from the unprotected electric motors in the building. The court refused to admit such testimony on objection made by the appellees.

While it is true that secondary evidence as to the contents of an alleged lost record should not be admitted until it is shown that the original cannot be produced at the time of trial, yet proof of its contents may be proved by any witness who has seen the record and has personal knowledge of what it contains. Williams v. Selby, 37 N.M. 474, 24 P.2d 728. See, also, United States v. Mortimer, 2 Cir., 118 F.2d 266; Cecil v. Montgomery, 95 Okl. 184, 218 P. 311; Gus Dattilo Fruit Co. v. Louisville & N. R. Co., 238 Ky. 322, 37 S.W.2d 856; Grayson v. Lynch, 163 U.S. 468, 16 S.Ct. 1064, 41 L.Ed. 230. Under these principles, and the circumstances surrounding this case, we conclude that the court committed prejudicial error in excluding the proffered evidence as to the contents of the alleged lost record.

330

It follows from what has been said that the judgment reviewed is erroneous and should be set aside. Accordingly, it will be reversed and the cause remanded to the district court with a direction to set aside its judgment and award a new trial. Reversal of the case being required as stated above, it is unnecessary to discuss the other errors complained of.

It is so ordered.

COMPTON, C. J., and SADLER, McGHEE and KIKER, JJ., concur.