396 P.2d 181

Curtis E. JOHNSON, Plaintiff-Appellee,

v.

Mrs. Wood E. JOHNSON, Ben Johnson, Jr., and Elwin E. Johnson, Defendants-Appellants.

No. 7339.

Supreme Court of New Mexico.

Oct. 26, 1964.

Rehearing Denied March 9, 1964.

Fred E. Dennis, Calvin R. Neumann, Clovis, for appellants.

Rowley, Davis, Hammond & Murphy, Clovis, for appellee.

MOISE, Justice.

This case was originally dismissed on this court's motion for failure of appellants to give timely notice of appeal as required under the March 15, 1961 amendment of Supreme Court Rule 5(5) (§ 21–2–1(5), N.M. S.A.1953). 74 N.M. 34, 390 P.2d 275. A motion for leave to appeal had been filed before thirty days after entry of final judg-ment, but the notice of appeal, although dated earlier, was not filed until after expiration of thirty days. On motion for rehearing, appellant argued that because of counsel's usual office practice of mailing notices immediately upon filing of papers in the clerk's office, we should assume that this had been done in this case. We determined that the rule as to timely filing of the notice was jurisdictional and that the exceptions noted in Adams v. Tatsch, 68 N.M. 446, 362 P.2d 984, should not be extended to include consideration of usual office practice. The mandate on dismissal of the appeal was duly transmitted to the clerk of the district court.

Since forwarding the mandate, motions to dismiss under similar circumstances have brought to our attention federal court holdings in cases under Rules 73 of the Federal Rules of Civil Procedure [28 U.S.C.A. Rule 73 (1958)] which are generally contra to our decision.

Rule 5 was amended to eliminate the motion and order which had been theretofore required. Notice of appeal was substituted to bring our procedure more in line with federal requirements. Although Rule 73 differs materially from our Rule 5 in some respects, the reasoning adopted by the federal courts under Rule 73 is pertinent and convincing when considering our Rule 5(5).

The federal courts have been "liberal" when passing on defects in documents looking to an appeal. 3A Barron & Holtzoff,

Federal Practice and Procedure § 73.14 (1955). The following statement of Circuit Judge Hutcheson in Crump v. Hill (CCA 5, 1939) 104 F.2d 36, 38, is in point:

" * * * It is true enough that the starting of an appeal within the time fixed is jurisdictional and that good practice requires conformity to the formal requirements of the Rule. But it would we think be a harking back to the formalistic rigorism of an earlier and outmoded time, as well as a travesty upon justice, to hold that the extremely simple procedure required by the Rule is itself a kind of Mumbo Jumbo, and that the failure to comply formalistically with it defeats substantial rights."

In the instant case, appellant filed what he denominated a Motion asking "leave to appeal" before 30 days had passed after entry of judgment. The Motion included the names of all defendants taking the appeal, and designated the judgment appealed from. Denomination of the document as a "Motion" rather than as a "Notice" should not be determinative. What is important is that the document substantially complied with and gave the information required by Rule 5(5). We conclude that the purpose of the rule requiring filing of notice has been met in this case. To hold otherwise would quite clearly be a step backward toward technical and formal procedure rather than forward in the direction of liberal application of rules favoring disposition of cases on the merits wherever possible, no question of jurisdiction being present. The Barelas Community Ditch Corporation v. City of Albuquerque, 61 N.M. 222, 297 P.2d 1051; Supreme Court Rule 16 (§ 21–2–1 (16), N.M.S.A.1953).

A word of caution is indicated. Although we adopt a position of liberality, counsel desiring or attempting to appeal should comply with the rules as promulgated and not rely on the court to overlook departures therefrom. In other words, we propose to consider nonjurisdictional deviation from the rules in each case as it arises. So far as jurisdictional defects are concerned there can be no exercise of discretion. The notice required by Rule 5(5) duly filed has replaced the order allowing appeal as the critical document transferring jurisdiction from the district court to this court. We here hold only that the fact that the paper filed is not denominated "Notice" is immaterial if the other requirements of the rule are substantially met. In this connection we note our language in Reed v. Fish Engineering Corporation, 74 N.M. 45, 390 P.2d 283, to the effect that the motion for appeal and order were ineffective to achieve an appeal. In that case, there was a sufficient notice and the appeal was considered on its merits. No inferences should be drawn from what was said in that case concerning the effectiveness of a motion for an appeal to serve as notice, if contrary to what is held herein.

██ · Appellee opposes the withdrawal of the mandate which had been forwarded to the district court some six months previously. He points out that our action raises serious problems of jurisdiction; he argues that no litigant can be secure in the knowledge that the litigation is at an end if the power to withdraw mandates is not limited. We agree that the desirability of termination of litigation and finality of judgments is beyond cavil. Kaye v. Cooper Grocery Company, 63 N.M. 36, 312 P.2d 798. Recently, in the case of Woodson v. Lee, 74 N.M. 227, 392 P.2d 419, we had occasion to consider this problem and there stated, "Although no time within which a mandate may be recalled is prescribed by our rules, it would seem fairly certain that upon mandate having been issued by us and action having been taken thereon in the district court, jurisdiction of this court would be at an end." Appellee does not contend that anything has been done in the district court proceeding following receipt of the mandate by it. Neither does he assert that any changes in property or rights in property have taken place, nor that any prejudice will result to any one by withdrawal of the mandate. Without suggesting how these considerations last mentioned would alter the situation, if at all, we are convinced that there are no reasons here present which require a different conclusion from that announced in Woodson v. Lee, supra. In this connection we have fully considered language quoted to us by appellee from Youmans v. Hanna, 35 N.D. 479, 161 N.W. 797, and the note in 84 A.L.R. 579, cited by appellee, and remain satisfied with our conclusion in Woodson v. Lee, supra, to which we adhere.

The opinion heretofore issued in this cause, together with the opinion on rehearing, 74 N.M. 34, 390 P.2d 275, and the order of dismissal thereon, are hereby withdrawn and we proceed to a consideration of the case on its merits.

The facts are fairly simple and generally undisputed. The land in question was patented to Prentice A. Johnson, appellee's father, in 1909. The patent was duly recorded in 1911. In that same year Prentice A. Johnson and wife conveyed the property to his brother, Ben Johnson, also known as L. B. Johnson, Sr., now deceased, for a stated consideration of $1,600.00. The appellants are his widow, whom he married in 1917, and two sons. Prentice A. Johnson was divorced in 1916 and appellee was raised by his mother. L. B. Johnson, Sr. died in 1943, and Prentice A. Johnson died intestate in 1960.

The action was brought by appellee to quiet title to the property in himself. Appellants duly answered, claiming ownership. A pre-trial conference was held and an order was entered thereon. The issues are clearly pointed up by the following paragraph quoted from that order:

"It is the contention of the plaintiff in this case that Ben Johnson also known as L. B. Johnson and who should with further certainty be identified as L. B. Johnson, Sr. reconveyed the premises to Prentice A. Johnson during his lifetime and that deed after delivery was accidentally destroyed without ever having been recorded, and further that the plaintiff .Curtis E. Johnson is the sole and only heir at law of Prentice A. Johnson. It is the contention of the defendants that Ben Johnson also known as L. B. Johnson and who for further certainty is identified as L. B. Johnson, Sr. never conveyed the lands in controversy to Prentice A. Johnson and that Ben Johnson died owning the lands in controversy."

After trial, the court found among other things:

"That subsequent to the divorce of Ida Johnson from Prentice A. Johnson and prior to the marriage of L. B. Johnson, Sr., to the defendant, Mrs. Wood E. Johnson, the said L. B. Johnson, Sr., re-conveyed said quarter section of land to Prentice A. Johnson and delivered the deed of conveyance to Prentice A. Johnson."

On this appeal, appellants rely on four points, all of which go to the question of whether the evidence upon which the trial court based its findings and conclusions was properly admitted and whether such evidence was of sufficient certainty to support the decision. Although the parties disagree on the quantum of proof necessary to establish the existence of a lost instrument and its contents, this court has clearly and succinctly stated its position as early as 1892. In Daly v. Bernstein, 6 N.M. 380, 397, 28 P. 764, 768, this court, in passing on the quantum of proof necessary to establish the existence and loss of an instrument, ruled:

"Fearing that his title would not sustain his claim, the defendant alleged that there was a subsequent deed from Apodaca and wife to Vow for this property, which was a straight warranty deed. That Vow had the deed, but it had been lost, and after search it could not be found. He introduced testimony of the loss, and then sought to introduce oral proof of the contents of the instrument. This the court refused to allow, upon the ground that the evidence was not sufficient to prove the loss, and that its execution was not proven. 'Before defendant should be permitted to give secondary evidence of its contents, it should prove that it had exercised the utmost diligence to procure the original.' Wiseman v. [Northern Pacific] Railway Co., (Or.) [20 Or. 425], 26 Pac.Rep. 272. The question as to whether the loss of the

instrument has been sufficiently proved to admit secondary evidence is to be determined by the court. 1 Greenl. Ev. § 558. This same author, in the section last quoted, lays it down that the diligence shown in the search must depend upon varying circumstances. We think that when the very existence of the instrument is denied, and the law, in the first place, requires the instrument to be in writing, the diligence shown ought to be of the highest character, before secondary evidence of the contents of the lost instrument should be allowed. The danger of the introduction of manufactured evidence is extremely great in such a case, and hence the party seeking to build up a defense upon such an instrument as in this case must use the utmost diligence. * * *"

Keil v. Wilson, 47 N.M. 43, 133 P.2d 705, 148 A.L.R. 397, where a lost promissory note was involved, contains the following pertinent language:

"We are not unmindful of the principle that when a fact must be proved by clear and positive evidence in order to make out a case, as we assume is the requirement in the instance of lost instruments, the party asserting that findings are supported by substantial evidence has an extra burden to discharge to show that the required standards are met. * * *

"The record discloses circumstances which tend to corroborate the testimony of the plaintiff and disparage that of the defendants.

"It will be appropriate to call attention to some principles which aid us in the conclusion we reach.

"The Supreme Court resolves all disputed facts in favor of appellee and views evidence in the aspect most favorable to him. Hedrick v. Jagger, 46 N.M. 379, 129 P.2d 340.

"Where case is tried by Court without a jury, the trial court is sole judge of credibility of witnesses and weight to be given their testimony. Chesher v. Shafter Lake Clay Co., 45 N.M. 419, 115 P.2d 636.

"A plurality of witnesses is not required in support of the execution and contents of a lost instrument, and the evidence of a single witness, unless otherwise provided by statute, may be sufficient. Vol. 8, Encyc. of Ev., Lost Instruments, p. 362. See, also, Andrew v. Keenan, 14 La.Ann. 705, 706.

"The principle that evidence required to establish a lost instrument and its contents must be clear and positive or clear and satisfactory, is not applied with equal vigor in every case. For example, in Telluric Co. v. Bramer, 76 W.Va. 185, 85 S.E. 177, 179, the court quoted the rule as follows:

' "Where the issue involves the existence and contents of a written paper, the doctrine seems to be well founded in principle that the greater the value of the instrument the more conclusive should be the proof of its existence and contents. And, where the instrument rises to the dignity and importance of a muniment of title, every principle of public policy demands that the proof of its former existence, its loss, and its contents should be strong and conclusive, before the courts will establish a title by parol testimony to property which the law requires shall pass only by deed or will.' "

See also, Annotations, 67 A.L.R. 1333 and 148 A.L.R. 400; Williams v. Miller, 61 N.M. 326, 300 P.2d 480, and Cross v. Ritch, 61 N.M. 175, 297 P.2d 319.

██ As already pointed out in the quote from Daly v. Bernstein, supra, it is up to the trial court to determine if the proof offered is sufficient to establish that the instrument was lost so as to permit proof of its contents by secondary evidence. Wigmore, in his monumental work on Evidence (3rd) § 1195, states, "Although the greater number of courts have from time to time expressed approval of the controlling principle that the sufficiency of the search should be left to the trial court, this principle is nevertheless often sinned against." In the instant case, proof was introduced to the general effect that Prentice A. Johnson kept his valuable papers in a trunk in his home; that about 1940 his home burned and the trunk was never seen thereafter. The trial court ruled that the proof of loss or destruction was sufficient under the circumstances without requiring additional prolonged inquiry with little or no reason to believe the search would be productive. We are satisfied that the showing was sufficient, and do not propose to "sin" against the rule stated by us by holding that something different or better calculated to establish a foundation should have been required.

██ Since this appeal involves the loss of a muniment of title, we must determine whether there is strong and conclusive evidence of the existence of, the loss of, and the contents of the deed in question. That there is proof of the execution and delivery of a warranty deed from Ben Johnson to Prentice A. Johnson is clear. Likewise, there is evidence that the land had been conveyed by Prentice and wife when a divorce was contemplated by them, and that upon the divorce action being completed Ben delivered the original deed back to Prentice. Further, there is proof that Prentice paid Ben $500.00 for any interest he might have had in the property, and that Ben executed and delivered a deed to Prentice in addition to returning the one he had received from Prentice.

However, no witness produced at the trial had read this deed. While there is some conflict in his evidence, James H. Johnson, a brother of Prentice and Ben, testified that he was present when Ben delivered this deed to Prentice. He stated that Prentice read the deed to him, and that it covered the quarter section of land involved in this litigation. There are other elements of proof. Albert Chiles, a cousin of appellant, testified that he rented the land from Prentice for more than twenty years immediately preceding Prentice's death. Also, the tax receipts indicate that all taxes were assessed to and paid by Prentice, excepting 1912 to 1919, inclusive. From 1920 to 1960 all assessments were in the name of Prentice and all taxes paid by him. In 1961 they were paid by appellee. Also, it appears that Ben died in 1943 and no claim was advanced by the appellants, being his widow and sons, until after Prentice's death. All of these circumstances were proper for the court to consider in determining the rights of the parties. As a matter of fact, the record discloses that Ben's sons knew nothing of any interest or ownership of their father in the property until after Prentice died. This was some seventeen years after Ben's death. Their claim and that of their mother, is based on the fact title stood in Ben's name, and the testimony of the mother together with other incidental circumstances which might be considered as supporting their position.

In a case of this kind we are particularly conscious of the difficulties inherent in attempting to make a determination of facts from the cold record before us. We have read the record carefully and find ample support for the findings made by the court. We are mindful that the rules for review of findings of fact made by the trial court should be applied strictly in accord with their spirit as well as with their letter. Whatever may be our impression of the facts as gleaned from the typewritten pages of the record, we will not overturn the court's findings and substitute our own views thereof unless such findings lack requisite support. We are convinced that the findings of the court are supported to the extent required by the decisions discussed above.

It follows that the cause should be affirmed. It is so ordered.

COMPTON, C. J., and CARMODY, CHAVEZ and NOBLE, JJ., concur.