**BARNSDALL REFINING CORPORATION
v. CUSHMAN–WILSON OIL CO. .**

No. 11113.

Circuit Court of Appeals, Eighth Circuit.
July 1, 1938.

Donald Evans, of Des Moines, Iowa, and Gentry Lee, of Tulsa, Okl. (M. D. Kirk, of Tulsa, Okl., and William F. Riley and Carr, Cox, Evans & Riley, all of Des Moines, Iowa, on the brief), for appellant.

Eugene D. Perry and John E. Perry, both of Des Moines, Iowa (Robert J. Bannister and Stipp, Perry, Bannister & Starzinger, all of Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment entered in an action at law in which appellee recovered damages for the breach of a contract of sale. Appellant as plaintiff brought action to recover $17,622.69 on account for petroleum products purchased by appellee from appellant. The parties will be referred to as they appeared in the lower court. Defendant, in its answer, admitted plaintiff's claim and pleaded a counterclaim for damages in excess of the amount due on plaintiff's account. Plaintiff's motion for a directed verdict having been denied, the case was sent to the jury on instructions to which plaintiff has saved certain exceptions. The jury returned a

verdict for defendant on its counterclaim for $2,000 in excess of plaintiff's claim, which in effect fixed defendant's damages at $19,622.69.

Plaintiff is a petroleum producing, refining and marketing company, while defendant is a retail distributor of gasoline and petroleum products in Des Moines and central Iowa. On October 27, 1931, plaintiff and defendant entered into a written contract comprising two parts. In the first part, defendant agreed to handle, advertise and sell plaintiff's products for a period of five years. That part of the contract is not here directly involved. The second part provided that,

" * * * after said sales contract has been in effect and operation for a period of three (3) years, the buyer may, if he so elects, offer for sale to the seller its fixed assets and good will, and the seller agrees to purchase said fixed assets and good will when so offered by the buyer at a price to be arrived at in the following manner:

"A. All of the physical properties of the buyer shall be appraised by a recognized appraisal company mutually agreed upon and the value so arrived at by this appraisal company shall be accepted as the value of the physical properties."

There was also a provision in the contract for determining the value of the good will, and also a provision that plaintiff, in the event of such purchase, should assume leases, but these provisions are not here important.

On August 26, 1936, defendant notified plaintiff that it desired to sell pursuant to the contract, and nominated Lloyd-Thomas Company of Chicago as appraisers. Before suggesting this company as an appraiser, defendant had actually had it make an appraisal of its assets, but this was not disclosed to plaintiff. On September 10, 1936, plaintiff wrote defendant, declining to make purchase on the ground that the "agreement in question falls far short of being an enforceable option to sell." Plaintiff then commenced this action to recover balance due on account, and defendant interposed a counterclaim for damages, as has already been noted.

At the trial, defendant offered proof, which was received over the objection of plaintiff, to the effect that an employee of Lloyd-Thomas Company had made an appraisal of the properties of defendant as

of August 15, 1936, some time prior to the date on which defendant proposed its name as the appraiser. The testimony was objected to upon the grounds, among others, that the appraisal had not been made by an appraisal company "mutually agreed upon;" that it did not represent a determination of value, but merely the cost of production less depreciation. This witness testified that he had not made the appraisal for determining market value; that the appraisal was made upon the basis of determining original costs from dealer's labor costs and applying rates of depreciation thereto; that what he did was to determine cost of reproduction of the property in its then condition. He testified that,

"If I had been going to make an appraisal of value for the purpose of sale, I would have used an altogether different system of obtaining my information. I would have taken into consideration factors which were omitted from consideration in the compilation of this exhibit. Lloyd & Thomas have made appraisals for the purpose of determining price to be paid under contract of purchase and sale. But appraisals for the purpose of determining price to be paid under contract of purchase and sale are considered to be out of our line. Our appraisal is supposed to be an accurate account of all the physical assets owned by the particular concern, and we don't care what anyone uses it for. Our ordinary line of work is making these appraisals which simply reflect reproduction cost and we make them in the form I have outlined. We take contracts to make appraisals for the purpose of determining the value for the purpose of purchase and sale, but it is not in our regular line of work."

Following the method outlined, he determined the reproduction cost new of these properties, less depreciation, to be $101,701.29. This he said was their "sound value." He stated that in making his appraisal he gave no weight to whether a building was on leased ground or to how long the lease was to run; that he was making an appraisal to ascertain cost less depreciation, and not market value; that whether a building was on a leasehold, where the lease was about to expire, should be taken into consideration in making an appraisal, and that it might make some difference; that he did not undertake to determine what was a fair price for the property to bring at a sale.

Defendant also produced testimony of several witnesses as to the market value of the physical properties, their values ranging from $54,603 to $63,733.

Plaintiff called a Mr. Hyder, vice president of the American Appraisal Company, who testified that a recognized appraisal company in searching for values had no prescribed formula; that in determining value, reproduction cost, market value, and capitalization of income should all be considered. He denied that the sole standard method of ascertaining value was the cost of reproduction new less depreciation.

Other witnesses called by plaintiff placed the market value of the physical properties at $65,000.

Plaintiff moved for a directed verdict on the grounds: (1) that the purchase price of the property was never determined in the manner which the contract provided; (2) the measure of damage, if any, for a breach of the contract was the difference between the contract price and its reasonable value, and that as the contract failed to fix a price, the court or jury could not supply it; (3) that the contract provided that the appraisal company to be mutually agreed upon, was to determine the value, and it was improper to assume that an appraisal company, in determining value, would appraise it at a figure in excess thereof; and (4) in no event could plaintiff recover any more than nominal damages. The court overruled this motion, and in submitting the case to the jury on defendant's counterclaim, gave, among others, the following instructions:

"You are instructed that before the defendant can recover on its counterclaim it must establish, first, the value that would in all reasonable probability, and which must be found from the evidence without speculation or guess work, have been arrived at had the parties carried out their agreement and there had been appointed a recognized appraisal company mutually agreed upon.

"If the defendant has established by a fair preponderance of the evidence that a recognized appraisal company mutually agreed upon would with reasonable certainty have appraised the physical property of the defendant company at a price in excess of the fair and reasonable market value of the physical properties, and with reasonable certainty what that price would be, then and in that event the defendant is entitled to recover for the difference between such price, if any, and the fair and reasonable market value of the physical properties."

Plaintiff excepted to these instructions and requested instructions which raised and preserved the questions reflected in its motion for a directed verdict.

As has been observed, the contract between the parties contained provision that the defendant might offer its fixed assets and good will for sale to the plaintiff, and the plaintiff agreed to purchase the property at a price to be arrived at by an appraisal of the physical properties by a recognized appraisal company "mutually agreed upon." Pursuant to this provision of the contract, defendant notified plaintiff that it chose to exercise its option and in effect asked the plaintiff to agree upon an appraisal company, suggesting the name of such a company. The plaintiff did not object to the appraisal company suggested, but denied that the contract contained "an enforceable option to sell these properties." This action on the part of plaintiff was more than a mere failure to agree to the naming of a particular appraisal company. Such action might not have constituted a breach of the contract because it was not obligated to agree to the appointment of any particular company. Plaintiff in effect repudiated the contract in declining to consent to the appointment of any appraisal company and thereby breached not only the provision relative to agreeing upon an appraisal company but its covenant to buy.

The contract being thus breached, the question is what, if any, damages are recoverable under the evidence in this action. We are not here concerned with what remedies might have been available to defendant in equity, whether a suit to reform or specifically to enforce, because it has elected to sue in an action at law for damages for the breach of the contract. It must, therefore, stand on the contract as written. The contract was wholly executory so far as it provided for the sale of defendant's properties. The only loss which could be suffered by defendant was the loss of the bargain. On the refusal of plaintiff to consent to the appointment of an appraisal company, thus preventing a determination of the price, no action at law could be maintained on the contract itself, except an action to recover damages for the breach of this covenant. In this state of the record, the court instructed

the jury that it might determine, if it could, what value would have been arrived at had the parties carried out their agreement to appoint a recognized appraisal company mutually agreed upon. Whether or not the evidence might ever be such as to enable a jury so to do, we think it clear that in this case it was not possible for the jury to determine what price appraisers would have fixed, because the evidence fails to show that appraisers have a single, fixed formula or standard by which they invariably determine value. Defendant's witness who fixed the sound value of the property at $101,701.29, stated that the appraisal was not made for the purpose of determining the value of the property for purchase and sale, yet, confessedly, this appraisal was for the very purpose of determining the sale price. He also admitted that if he had been going to make an appraisal "of value for the purpose of sale, I would have used an altogether different system of obtaining my information. I would have taken into consideration factors which were omitted from consideration in the compilation of this exhibit."

What meaning is to be given to the word "value," as used in this contract? Its ordinary meaning, where a sale is involved or contemplated, is market value,— fair value between one who wants to purchase and another who desires to sell. Hetland v. Bilstad, 140 Iowa 411, 118 N.W. 422; In re McGhee's Estate, 105 Iowa 9, 74 N.W. 695; Dean v. Hawes, 29 Cal. App. 689, 157 P. 558.

In Hetland v. Bilstad, supra, the Supreme Court of Iowa, in considering the meaning to be given to the word "value" in a contract for sale, said (page 423 of 118 N.W.):

"By 'value,' in common parlance, is meant 'market value,' which is no other than the fair value of property as between one who wants to purchase and another who desires to sell."

In the still earlier case, In re McGhee's Estate, supra, the court said (page 697 of 74 N.W.):

"When the word 'value' is applied to property, and no qualification is expressed or implied, it means the price which the property will command in the market."

Prof. Williston, in his work on contracts, at section 803, in discussing a contract requiring the co-operation of both the parties, says:

"It may be difficult to fix upon any actual damage because it must be assumed that if the valuers had acted properly they would have fixed a valuation identical with the market value or real value of the property."

Mr. Page, in his work on contracts, Vol. 5, sec. 2615, says:

"If the contract (for sale of real or personal property) is entirely executory and the only loss which will be suffered by either party is the loss of the bargain, the refusal of one of the parties to the contract of sale to appoint appraisers, or the refusal of the appraisers to act, prevents the determination of the price; and accordingly no action can be brought on the contract itself except an action to recover damages if one of the parties has broken his covenant to appoint an appraiser. Only nominal damages can be recovered, however, in cases of this sort since it is impossible to show what price the appraisers would have fixed if they had been appointed and accordingly it is impossible to show the actual damages which were sustained."

In construing contracts, words will ordinarily be given the meaning that common speech imports. Hill v. Travelers' Ins. Co., 146 Iowa 133, 124 N.W. 898, 28 L.R.A.,N.S., 742; Restatement Law of Contracts, Sec. 235; Aschenbrenner v. United States F. & G. Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137; Day v. Equitable Life Assurance Society, 10 Cir., 83 F. 2d 147. In a contract for the sale of property, it is reasonable to presume that the parties, in using the word "value," intended "market value," and had they intended otherwise they should have used language indicating such intention. Hetland v. Bilstad, supra. They should not ask a court, under the guise of construction, to write for them a new contract.

Plaintiff urges that it did not agree to buy defendant's property at cost less depreciation. Defendant admits that there is in the contract no express provision to that effect, but contends here that since all recognized appraisal companies make their appraisals upon that basis, impliedly the contract required that plaintiff take the property upon such an appraisal. We have already pointed out that the evidence does not warrant defendant's assumption that all appraisal companies make their appraisals upon the basis of cost less depreciation. The court did not so construe the contract

nor the evidence, and did not try the case on that theory, but instead, left it to the jury to say whether the value to be fixed by an appraisal company, if one had been agreed upon, would have exceeded the market value of the property. We must, on appeal, adhere to the theory on which the case was tried in the lower court. The successful party, in the absence of a cross-appeal, can not be heard to urge error in the trial of the action. Bremner v. Hendrickson, 8 Cir., 31 F.2d 893; United States v. Ten Cases, etc., 8 Cir., 49 F.2d 87; Jones Store Co. v. Dean, 8 Cir., 56 F.2d 110. There was no substantial evidence upon which the jury could, with any degree of certainty, determine what price an appraisal company mutually agreed upon by the parties, would have fixed. Would that price have been based upon the cost of reproduction new less depreciation, or would it have been the market price? On the record as made, we incline to the view that it should have been the market price. The verdict of the jury does not respond to the instructions of the court, nor the evidence. Instead of accepting the figures of defendant's witnesses as to the appraised value, it seems to have made its own appraisal and determined that the difference between the price which should have been reached by an agreed-upon appraisal company and the market value was approximately $20,000. This is not supported by any substantial evidence and can not be rescued from the realm of fancy and speculation.

The judgment appealed from is therefore reversed and the cause remanded with directions to grant a new trial.