376 P.2d 486

**Minnie E. O'MEARA, Plaintiff-Appellee and Cross-Appellant,**

v.

**COMMERCIAL INSURANCE COMPANY, a corporation, Defendant-Appellant and Cross-Appellee.**

**No. 6991.**

Supreme Court of New Mexico.

Nov. 26, 1962.

Mears, Mears & Boone, Portales, for appellant.

Frank M. Mims, Albuquerque, for appellee.

CARMODY, Justice.

Defendant insurance company appeals an award which was granted below under a $50.00-deductible automobile policy. Plaintiff cross-appeals, claiming a different measure of damages from that applied by the trial court, and for interest on the amount due.

The questions presented, as to both the appeal and cross-appeal, are really those of substantial evidence, although the cross-appeal has an additional point raised with respect to the failure of the trial court to award interest prior to the judgment.

The suit was originally instituted by Watts and O'Meara (appellee here), against the Security Finance Company, two of its agents (Thompson and Swackhammer), and the appellant, Commercial Insurance Company. At the conclusion of the trial, the case was dismissed as to plaintiff Watts and all of the other defendants except the appellant insurance company. None of the other parties appealed, and it is before us as between O'Meara and Commercial Insurance Company.

In March of 1958, Watts, being in need of cash, sold a Cadillac automobile to Biddy Auto Sales, at a price of $2,550.00. The car was sent to Phoenix to be auctioned, but a distraint warrant was issued because of an income tax lien against Watts, and, as a result, the car was returned to Roswell, New Mexico, upon Watts' agreement to repurchase the car from Biddy for the same price. However, Watts no longer had sufficient funds, and worked out an arrangement with O'Meara to assist him in repurchasing the automobile, as follows: Watts put up $1,750.00, and O'Meara signed a note and chattel mortgage for $1,070.52 and took title in her own name. The note and mortgage were assigned to Security Finance Company, with whom the loan arrangements had been made. Security Finance Company was an agent of Commercial Insurance Company, and $131.50 of the amount borrowed by O'Meara was paid to the insurance company as a premium on a $50.00-deductible collision policy. In the loan and insurance application, Watts was listed as an operator "other than the Applicant (O'Meara]." About two days before the insurance application had been made, Watts and O'Meara had entered into a lease agreement (although the same was not signed until later), under which Watts was allowed to use the car upon paying O'Meara $90.00 a month, and Watts reserved the right to purchase the automobile from O'Meara for the price of $2,550.00. This arrangement apparently had a twofold purpose—(1) to protect O'Meara in case Watts defaulted on the monthly payments, and (2) to allow Watts to have the use of the car without having legal title thereto, in order that no lien would be filed by the Internal Revenue Service.

Less than a month later, Watts wrecked the automobile. The insurance company

was notified and took charge. It was thereupon determined that the car was a total loss and, after salvage bids were taken, O'Meara was informed that the insurance company denied liability. Thereafter, the company sold the salvage for $1,025.00 and, after deductions, remitted to O'Meara the sum of $101.28.

The trial court determined that there were no false or fraudulent representations made to the insurance company, found that the value of the car was $2,550.00, and rendered judgment in favor of O'Meara for $1,561.70.

Appellant company relies on a single point for reversal, that O'Meara was guilty of fraud and misrepresentation in obtaining the policy, and that the company had every legal right to cancel the same.

With respect to this claimed error, the trial court made the following findings of fact:

"3. That at the time Mrs. O'Meara applied for said policy of insurance she advised the agent of the Commercial Insurance Company that G. T. Watts would also be an operator of the automobile to be insured and wanted it to be covered while he was operating the same.

"4. That the defendant Commercial Insurance Company, in the written application for the insurance policy stated therein that G. T. Watts would be an operator of the automobile."

and also made the following conclusion of law:

"3. That the possession of the automobile and its operation by G. T. Watts was disclosed to the agent of the defendant Commercial Insurance Company at the time the policy in question was issued and no false or fraudulent representations were made by the plaintiffs to the defendant Commercial Insurance Company."

The insurance company, in its brief, admits that there is a sharp conflict in the evidence as to whether or not the company knew of the lease arrangement, or that it was contemplated that Watts would have possession of the car. In this statement they are quite correct, and an examination of the record discloses that there is ample evidence on both sides as to the knowledge, or lack of knowledge, of the lease agreement and possession of the car, by the agents of the insurance company. We believe that there is substantial evidence that the company knew, at the time of the issuance of the policy, that a lease arrangement was contemplated.

As we said in Minor v. Homestake-Sapin Partners Mine, 1961, 69 N.M. 72, 364 P.2d 134:

"We will not weigh conflicting evidence and will examine it only for the purpose of determining whether there is substantial proof upon which the verdict was based."

See, also, Hyde v. Anderson, 1961, 68 N.M. 50, 358 P.2d 619; Clodfelter v. Reynolds, 1961, 68 N.M. 61, 358 P.2d 626; State ex rel. State Highway Commission v. Tanny, 1961, 68 N.M. 117, 359 P.2d 350; Brown v. Martinez, 1961, 68 N.M. 271, 361 P.2d 152.

■ We find no merit in the insurance company's argument that Watts' manipulations in reacquiring the automobile were to circumvent his tax obligation to the federal government and, consequently, a fraud upon the insurance company. There is evidence that the insurance agent knew of the tax lien before the policy issued, and nevertheless, regardless of Watts' motives for inducing O'Meara to take title, they are of no consequence in the determination of whether the insurance company was misled. Neither is there any evidence in the record that Watts had exclusive possession of the automobile, as claimed by the company, or that the lease agreement so provided. The trial court found that no fraud or misrepresentation was perpetrated by Mrs. O'Meara, the owner of the car, and that determination is supported by the evidence. Therefore, we find the appellant's claim of error without merit.

■ The appellant company, under its single claim of error, also argued certain other matters. However, the disposition of the fraud and misrepresentation claim makes it unnecessary to consider the other matters raised. We also observe that we have many times ruled upon the quantum of proof necessary to substantiate an allegation of fraud. In any event, it cannot be presumed, but must be proved by clear, strong and convincing evidence. See, Frear v. Roberts, 1947, 51 N.M. 137, 179 P.2d 998; Jones v. Citizens Bank of Clovis, 1954, 58 N.M. 48, 265 P.2d 366; Lumpkins v. McPhee, 1955, 59 N.M. 442, 286 P.2d 299.

Turning, then, to O'Meara's cross-appeal, it is there claimed that the trial court's finding No. 11 is not supported by substantial evidence. This finding is as follows:

"11. That at the time the Cadillac automobile was wrecked, the actual cash value of the same was $2550.00."

The only evidence in the record as to any sales of the automobile, other than its salvage value, related to the sales from Watts to Biddy and from Biddy to O'Meara. It is claimed that the figure used by the court was not the actual cash value, because both of these sales were in the nature of forced sales, not sales upon the open market. The only other evidence in the record as to value was by stipulation of the parties, in which it was agreed that the N. A. D. A. Blue Book value at the time of the accident was $3,470.00. Under the policy itself, the liability of the company was limited to the actual cash value.

In Samosa v. Lopez, 1914, 19 N.M. 312, 142 P. 927, this court said:

"Actual cash value of real or personal property has been defined to be the price it would sell for in the ordinary course of business, free from incumbrance, and not at forced sale."

See also Dailey v. Foster, 1913, 17 N.M. 654, 134 P. 206; A. & A. Tool & Supply Co. v. Comm'r. of Int. Rev., 10th Cir., 1950, 182 F.2d 300; Moran v. Grosse Pt. Tp., 1947, 317 Mich. 248, 26 N.W.2d 763; Barnsdall Ref. Corp. v. Cushman-Wilson Oil Co., 8th Cir. 1938, 97 F.2d 481.

■■ On numerous occasions, we have recognized "Blue Book" values as evidence of market value (see, Curtis v. Schwartzman Packing Co., 1956, 61 N.M. 305, 299 P.2d 776; Fulwiler v. Traders & General Ins. Co., 1955, 59 N.M. 366, 285 P.2d 140; cf. California Sugar & White Pine Co. v. Whitmer Jackson & Co., 1928, 33 N.M. 117, 263 P. 504), but this is not to say that such evidence is necessarily conclusive. The trial court, quite obviously, felt that one or both of the sales for $2,550.00 was evidence of the actual cash value. O'Meara would have us disregard the evidence of the two sales as being not substantial. With this position, however, we cannot agree. The sale between Watts and Biddy was apparently in the ordinary course of business. Watts attempted to sell the car to another dealer, without success, and then consummated the sale with Biddy. The only way such a sale could be deemed a "forced sale" would be to ignore these other facts and circumstances and to accept, without question, the testimony of Watts that the sale price was controlled entirely by his need for immediate cash. There is nothing to show that Watts was required to sell, unless we were to determine that any sale made by a person allegedly in financial difficulty is not evidence of cash value. This we decline to do. The evidence of the sale was competent evidence and substantial; and as long as the trial court found this to be the actual cash value, it is not within our province to overturn it. To hold otherwise would be to substitute our judgment for that of the trial court. We would also observe that, according to the agreement between O'Meara and Watts, the latter reserved the right to repurchase for the $2,550.00 figure. O'Meara having so agreed and the trial court having determined Watts to have no interest in the present recovery, O'Meara has received all she would have received if the car had not been damaged and Watts had performed, and should not be heard to complain.

■ Under the evidence, the trial court impliedly found that the sale between Watts and Biddy was a fair sale according to established business methods, and was, therefore, substantial evidence of the

actual cash value of the automobile. Compare, Mountain States Aviation, Inc. v. Montgomery, 1962, 70 N.M. 129, 371 P.2d 604. Therefore, the finding of the trial court is conclusive on appeal and will not be set aside by us, regardless of whether this court agrees with the determination of the trial court. See, Maryland Casualty Company v. Jolly, 1960, 67 N.M. 101, 352 P.2d 1013.

O'Meara, also on her cross-appeal, claims that interest should have been awarded on the amount of the claim, either from the time of the denial of liability by the company, or "at least" the date of the salvage sale.

The applicable statute is § 50-6-3, N.M. S.A.1953, which, insofar as in any sense pertinent, is as follows:

> "The rate of interest, in the absence of a written contract fixing a different rate, shall be six per cent [6%] per annum, in the following cases:
>
> "First. On money due by contract.
>
> "Second. On judgments and decrees for the payment of money when no other rate is expressed.
>
> \*    \*    \*    \*    \*    \*
>
> "Fourth. On money due upon the settlement of matured accounts from the day the balance is ascertained."

■ O'Meara claims that the amount due is money due by contract, and that she, in any event, is entitled to interest from the date of the salvage sale, if not before. The company, on the contrary, places reliance on the second and fourth sections of the above statute, although we are unable to see how the paragraph numbered "Second" is in any sense applicable. Also, it is doubtful if the matter at issue in this case could be termed a "matured account," and therefore we do not believe the paragraph numbered "Fourth" applies.

It would seem that O'Meara is correct in her contention that the money due on the policy is "due by contract," and is therefore subject to interest at the rate of six per cent.

The cases of Roswell State Bank v. Lawrence Walker Cotton Co., 1952, 56 N.M. 107, 240 P.2d 1143, and White v. Zutell (S.D.N.Y.1958), 161 F.Supp. 567, are clearly distinguishable, inasmuch as they did not relate to a contract between the parties to the suit.

■ The insurance company asserts that this particular section of the statute applies only to liquidated accounts. However, see State T. & S. Bank v. Hermosa Land & Cattle Co., 1925, 30 N.M. 566, 240 P. 469, and Sundt v. Tobin Quarries, Inc., 1946, 50 N.M. 254, 175 P.2d 684, 169 A.L.R. 586, wherein we held that if the exact sum of the indebtedness can be readily ascertained, the reason for denying interest because the debtor does not know what sum he owes ceases to exist. In State T. & S. Bank v.

Hermosa Land & Cattle Co., supra, we said:

"\* \* \* The interest awarded was attacked in the lower court and attacked here only on the ground that the damages were unliquidated. This we find not a sound proposition. \* \* \*"

See, also, Fanderlik-Locke Co. v. United States, 10th Cir. 1960, 285 F.2d 939; Chase v. National Indemnity Co., 1954, 129 Cal. App.2d 853, 278 P.2d 68. Here, there is ready reference to list prices of fair market values and possible reliable appraisals and salvage estimates, and therefore, except for the company's denial of liability, the amount of the indebtedness was readily ascertainable.

There can be no question but that the policy of insurance created a contract between O'Meara and the insurance company. Thus, we conclude that the date on which the contract of insurance was breached—June 30, 1958, when appellant denied liability—is the date when interest, as an element of damage, might be considered. The trial court could have included such an award in arriving at the amount of the judgment; however, it refused to do so and we decline to interfere with such a result under the facts of this case. The allowance of interest as an element of the total damage, under the circumstances here present, is a matter of discretion in the trier of the facts, and not a matter of right under the statute.

See, 1 Restatement of the Law, Contracts, § 337, wherein the rule is stated as follows:

"If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows:

"(a) Where the defendant commits a breach of a contract to pay a definite sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt or money value from the time performance was due, after making all the deductions to which the defendant may be entitled.

"(b) Where the contract that is broken is of a kind not specified in Clause (a), interest may be allowed in the discretion of the court, if justice requires it, on the amount that would have been just compensation if it had been paid when performance was due."

In our judgment, the instant case falls under the provisions of subsection (b). Compare Thorp v. American Aviation & General Ins. Co., (E.D.Pa.1953), 113 F. Supp. 764.

Recognition of the above rule of the Restatement should aid the trial courts in their determination of the vexatious problems relating to the awarding or not awarding of interest, and will avoid the necessity of making the fine distinctions which many courts have done. See annotations, 169 A.L.R. 1074 and 1100; 43 A.L.R.2d 327; 154 A.L.R. 1356; and 36 A.L.R.2d 337; the cases cited therein showing the wide divergence of opinion, even within the same jurisdiction in some instances, of the decisions on the subject.

The cause will be affirmed in all respects. IT IS SO ORDERED.

MOISE and NOBLE, JJ., concur.

COMPTON, C. J., and CHAVEZ, J., not participating.