413 P.2d 477

George H. MONTGOMERY and his wife, Juanita Montgomery, Plaintiffs-Appellees and Cross-Appellants,

v.

Erminee COOK, Individually and as Administratrix of the Estate of V. G. Cook, Deceased, Defendant-Appellant and Cross-Appellee.

No. 7662.

Supreme Court of New Mexico.

April 18, 1966.

---

Lowell Stout, Easley & Pyatt, Hobbs, for appellees and cross-appellants.

Girand, Cowan & Reese, Hobbs, for appellant and cross-appellee.

CHAVEZ, Justice.

This case arose from a real estate purchase contract entered into between plaintiffs-appellees and cross-appellants, George H. Montgomery and Juanita Montgomery, his wife, hereinafter referred to as "vendees," and V. G. Cook and his wife, Er-

minee Cook, defendant-appellant and cross-appellee, hereinafter referred to as "vendors."

On September 29, 1955, in the office of attorney T. R. Johnson, Hobbs, New Mexico, vendors executed a warranty deed to vendees covering the property in question, and left said deed with Mr. Johnson to be placed in escrow in the Lea County State Bank in Hobbs in accordance with the escrow agreement. The contract was executed by vendors in Johnson's office on September 30, 1955. On October 3, 1955, vendees executed the contract in Midland, Texas, and also executed a deed of trust, covering the land in question, and a vendor's lien note in the amount of $76,800 to be paid in ten yearly installments of $7,680 each beginning January 2, 1957. These instruments and the escrow agreement were delivered to Johnson's office in Hobbs a few days thereafter; however, said instruments were misplaced in Johnson's office and were not delivered to the escrow agent. Between September 29, 1955, and September 28, 1956, and within the year's limitation provided in the escrow agreement, vendees drilled and equipped three sufficient irrigation wells on the two sections of land in question and root plowed, raked, leveled and deep plowed both sections in substantial compliance with the terms of the agreement. Vendors received tax statements in 1955 and 1956 covering the land in question and vendors paid the taxes for those years without notifying vendees of their pro rata share of the 1955 taxes, or the amount of the 1956 tax statement. In neither year did vendees inquire as to their share of the taxes or attempt to pay the same, as provided by the contract, and vendees did not pay the January 2, 1957, installment due on the contract.

The contract provided that the bank was authorized to deliver the warranty deed to vendees, and the vendor's lien and deed of trust to vendors, at such time as vendees furnished the bank with satisfactory evidence that vendees had deep plowed, leveled or land planed the subject land, and drilled three irrigation pumps thereon, said improvements to be made within one year from the date of the contract.

The trial court found:

"9. In October, 1956, and again in November, 1956, the plaintiff George H. Montgomery went to the escrow agent Lea County State Bank and advised the bank's escrow officer that plaintiffs had performed the conditions of the escrow contract which entitled them to the deed. The escrow officer advised plaintiff that none of the escrow papers including the deed had ever been placed with the escrow agent and that delivery of the deed could not be made. Proof of compliance with the conditions of the contract

was not asked of the plaintiff nor furnished by him.

"10. Plaintiff did not make demand for delivery of deed upon Theodore R. Johnson or Defendant Cook except by copy of the letter of March 27, 1957, and by the letter of April 5, 1957. Upon receipt of the letter of April 5, 1957, from plaintiff, the defendant V. G. Cook instructed his attorney Theodore R. Johnson not to place the deed and other papers in escrow, and they were retained by said attorney.

"11. The letter of March 27, 1957, from plaintiffs' attorney to the escrow agent was notice to the escrow agent not to deliver any of the escrow instruments to any of the parties.

"12. Plaintiff did not pay the January 2, 1957, installment of the Vendor's Lien Note nor make a tender of payment on or before the due date.

"13. On March 6, 1957, defendants gave plaintiffs 30 day written notice by registered mail of default of the January 2, 1957, installment payment and further notified plaintiffs that if payment was not made within 30 days the contract would be terminated and cancelled. Plaintiffs did not make payment within the 30 day period but did notify defendants that they were ready to and would make the payment when the deed was placed in escrow in the Lea County State Bank. The deed was never placed in the bank and the payment was never made or further tendered.

"14. From the time the contract was reduced to writing until the filing of the answer in this case, Theodore R. Johnson was the attorney for the Cook Defendants, and the Montgomery Plaintiffs relied upon the counsel and advice of another attorney. Plaintiff Montgomery did deliver the papers to the office of Theodore R. Johnson with the understanding that Mr. Johnson would deliver them to the escrow agent.

"15. In May, 1957, plaintiff removed the pumps and motors from the three irrigation wells and moved them from the premises.

"16. In 1957, plaintiff cultivated about three-fourths of the south half of Section 9 and did not cultivate any of the other land.

"17. The value of the land at the time of the purchase contract was $76,-800.00. The value after plaintiff had completed the work was $125.00 per acre or $160,000.00.

# 204

"18. Plaintiffs grew 385 acres of cotton for the year 1956 and produced ¾ths of a bale per acre. The cotton was put in a government loan, the government loan allowance being 31¢ to 34¢ per pound, and an average bale weighed 500 pounds. The land produced approximately 288 bales of cotton, having a loan value of approximately $155.00 per bale.

"19. On June 8, 1957, plaintiff moved his hired man from the premises and did nothing thereon from that date. Defendants took possession for the balance of 1957 and raised some cotton and feed.

"20. Plaintiffs expended the total sum of $49,120.00 in root plowing, raking, leveling and deep plowing the land and in drilling and casing three irrigation wells and that said sum was reasonable and necessary.

"21. The land was not damaged by the operations of the plaintiffs thereon, but in fact the value of the land was enhanced thereby.

"22. The only evidence of rental value of the land is $4.00 per acre, testified to by the Witness Hilburn."

■ Vendors' point I is that a vendee in default may not rescind a real estate contract and obtain restitution for improvements made or recover damages sustained.

The first subpoint raised is that the trial court erred in conclusions of law Nos. 2 and 3, that failure of vendors to deliver the deed to the escrow agent constituted a substantial and material breach of contract. Vendors contend that, at the time demand was made by vendees' letters of March 27, 1957, and April 5, 1957, for delivery to the escrow agent, vendees were not entitled to such delivery because at that time they were in default; and since vendees had been notified by vendors on March 6, 1957, that unless the defaulted installment payment due January 2, 1957, was paid within thirty days, their interest in the property would be canceled and terminated under the provisions of the contract. Vendors argue that vendees not having remedied said default, may not now complain of vendors' failure to place the deed with the escrow agent.

The escrow agreement and contract for the sale contains the following paragraph with regard to the warranty deed:

"The sellers have this date executed a warranty deed in favor of the purchasers and obtained therein a vendor's lien note and deed of trust in favor of the sellers, which warranty deed, vendor's lien note and deed of trust shall be deposited, along with the original of this contract, in escrow in the Lea County State Bank, Hobbs, New Mexico, and such bank shall act as escrow agent of both parties and is hereby specifically authorized to deliver said warranty deed to the pur-

chasers and the vendor's lien note and deed of trust to the sellers at such time as the purchasers have furnished said bank with satisfactory evidence that the purchasers have deep plowed, leveled or land planed such land and drilled 3 irrigation wells thereon and installed suitable irrigation pumps therein."

In 1956 vendees were informed by the escrow agent that the deed had not been placed in escrow. In March and April, 1957, vendees demanded delivery of the deed from vendors, but vendors had specifically instructed their attorney to withhold such delivery.

The escrow agreement and contract for sale further provides, in the paragraph allowing vendees 30 days in which to remedy any default, that:

"* * * the sellers may immediately terminate and cancel this contract and in the event of such termination or cancellation the Lea County State Bank, Hobbs, New Mexico, is hereby specifically authorized to return said warranty deed to the sellers. * * *"

It is apparent that the parties did not specifically provide that the delivery of the warranty deed to the escrow agent would be a condition precedent to vendees' obligation to make the contract payments. However, it is well settled that in appropriate instances a condition precedent may be deduced from the construction of the

entire contract in order to reach the most equitable result. Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 207 A.2d 522; Metschke v. Marxsen, 176 Neb. 240, 125 N.W.2d 684; 17 Am.Jur.2d, Contracts, §§ 321, 322; 17A C.J.S. Contracts §§ 338, 344.

Here vendors absolutely refused to place the deed with the escrow agent unless the payment due on January 2, 1957, was made. We find no contract provisions requiring vendees to make the first payment before vendors have the duty to place the instruments in escrow. Neither do vendors base their refusal upon any provisions in the contract. In addition, vendees offered to make the payment as soon as the deed was delivered to the escrow agent. We believe that, since vendees had already spent in excess of $49,000 on the land, they would have been foolish to have made the additional first payment without any legal proof being first deposited with the escrow agent by vendors to show their right to the property. W. E. Stewart Land Co. v. Terrell, (Tex. Civ.App.1924), 266 S.W. 604. Compare, Bell v. Lammon, 51 N.M. 113, 179 P.2d 757.

The escrow agreement dated September 29, 1955, specifically provided that the deed would be delivered to vendees by the escrow agent if the land improvements provided in the contract were satisfactorily made within one year. Thus vendors impliedly promised to have the deed delivered to the escrow agent by September 29, 1956. Despite the fact that the instruments had not

been delivered to the bank as late as April 1957, vendees were willing to comply with the terms of the contract as soon as the instruments were so deposited. Vendors had nothing to lose by depositing the deed with the escrow agent. Had they made such delivery, their deed was not irretrievable. For if vendees had then refused to make the payments as provided by the contract, vendors could have given proper notice of default and, in due time, been entitled to redelivery of the deed from the escrow agent. It thus appears that vendors' actions were governed by more than mere apprehension for the deed.

The fact that vendees had not paid their pro rata share of the taxes, as provided in the escrow agreement and contract, does not prevent vendors' failure and refusal to deliver the deed from being a breach of the contract. Vendors failed to notify vendees of this default, as provided by the contract, and there could have been no default by vendees until vendees were so notified by vendors and given the opportunity to remedy such default. We also note that no time is provided in the contract for vendees to pay such taxes.

We believe that vendors' obligation to deliver the deed to the escrow agent was an absolute condition precedent so vital and essential to the contract that a failure to so deliver the deed relieved vendees of any obligation whatsoever until such deed was so deposited. Vendees were entirely reasonable in offering to make the payment as soon as vendors delivered the deed to the escrow agent.

■ Vendees need not have given the escrow agent any proof that the land work had been performed, as vendors argue, because the deed had not been deposited with the escrow agent. It is well settled that equity does not require a useless act, and the terms of the executed contract were not binding upon the parties until the deed and other instruments were deposited with the escrow agent.

■ Vendors' contention, that attorney Johnson was the agent for both parties and consequently both parties failed to deliver the instruments to the bank, is without merit. Vendors' instruction to Johnson to withhold the deed from the escrow agent extinguished any joint agent relationship and is evidence that Johnson was probably not the agent for both parties. This is readily apparent from the fact that vendees requested Johnson to deliver the instruments to the escrow agent, and he refused to do so upon vendors' instructions to withhold said delivery.

The cases cited by vendors in support of their contention are not applicable, because all of those cases presuppose that the vendor is not in default, that he is willing and ready to perform, and that the equities are not heavily in favor of the vendee.

The trial court was correct in holding that the failure and refusal of vendors to deliver the warranty deed to the escrow agent constituted a substantial and fundamental breach of the contract. Further, there is substantial evidence to support the remainder of the trial court's findings which vendors assert are erroneous under their first point.

■ Vendors next contend that vendees are not entitled to a rescission of the contract based on grounds of a mutual rescission. As stated above, vendees committed no breach of contract because they were not obligated to make the first payment until the instruments were delivered to the escrow agent. We need not discuss whether the parties mutually rescinded the contract. Rescission was available to vendees because vendors' failure to deliver the deed to the escrow agent was a substantial and fundamental breach of the contract. See Samples v. Robinson, 58 N.M. 701, 275 P.2d 185; Yucca Mining & Petroleum Co. v. Howard C. Phillips Oil Co., 69 N.M. 281, 365 P.2d 925.

■ Vendors' point III asserts that vendees are not entitled to judgment of $44,-000, because vendees never offered, in their equitable complaint, to recompense vendors for the use of their land during the 21 month period. No authority is cited to support this contention. In conclusion of law No. 8 and supplemental conclusion No. 1, the trial court allowed vendors the reasonable value of rent for 1956, but did not allow them rent for 1957 because they had the benefit of a crop harvest that year. There is also evidence that vendors received the benefit of considerable improvements and intangible assets, which they acquired without receiving credit therefor, since the same were not required by the contract. This contention, that vendees failed to do equity, is completely without merit.

■ Under point IV vendors argue that the trial court erred in conclusion of law No. 10, in allowing interest at the rate of 6% per annum from June 8, 1957, because unliquidated claims not readily ascertainable do not bear interest prior to judgment. The trial court concluded that interest should be allowed from the date that vendors resumed possession of the premises on June 8, 1957.

This proposition is readily disposed of by the excellent discussion in State Trust and Savings Bank v. Hermosa Land and Cattle Co., 30 N.M. 566, 240 P. 469, on the distinction between liquidated and unliquidated damages, and the fact that the trial court's allowance of interest is presumed to be correct. The cost of improvements to vendees was a fixed sum and easily reducible to exact amounts, as shown by the witnesses' testimony and the trial court's findings based thereon. See also, Sundt v. Tobin Quarries, Inc., 50 N.M. 254, 175 P.2d 684, 169 A.L.R. 586; and O'Meara

v. Commercial Insurance Company, 71 N.M. 145, 376 P.2d 486.

 After vendors appealed from the trial court's decision, vendees filed timely notice of cross-appeal and vendors moved to dismiss the cross-appeal and strike the brief in chief of vendees. Vendors assert that the cross-appeal should be dismissed because vendees failed to comply with § 21–2–1(5), N.M.S.A., 1953 Comp.; failed to set forth the points relied upon and to file a counter praecipe; and that such failures deprive this court of jurisidiction to hear the case. Vendors further argue that the allowance of the cross-appeal will result in an undue hardship on vendors. Vendors assert that, since vendees' only action in taking the cross-appeal was the giving of the notice of cross-appeal, and there being no subsequent order by the trial court granting such cross-appeal, then under the Rule 5 then applicable in 1958 the appeal is defective. The governing provision for cross-appeals is found in § 21–2–1(7) (2), N.M.S.A., 1953 Comp. See also, Reynolds v. Ruidoso Racing Association, Inc., 69 N.M. 248, 365 P.2d 671; Campbell v. Campbell, 62 N.M. 330, 310 P.2d 266. Section 21–2–1(7) (2) allows a cross-appeal if a party shall timely make application therefor. There is no requirement that an order be entered by the trial court allowing the cross-appeal.

 This court obtained jurisdiction in the instant case by virtue of the order of the trial court allowing the appeal, and it would be a useless act to require vendees to obtain a further order allowing the cross-appeal. The purpose of Rule 7(2) is to notify the appellants (vendors) of the cross-appeal. Even were this court to find that an order is required prior to a cross-appeal, still vendees have substantially complied with the provisions of the Rule. See, Lukins v. Traylor, 22 N.M. 207, 160 P. 349. It is also well settled that this court will construe its rules liberally to the end that causes on appeal may be determined on the merits. Jaritas Live Stock Co. v. Spriggs, 42 N.M. 14, 74 P.2d 722; Pankey v. Hot Springs Nat. Bank, 42 N.M. 674, 84 P.2d 649.

Vendors rely heavily on the Reynolds case as requiring a dismissal of this cross-appeal. That case is clearly distinguishable from the instant case, because in Reynolds there was no attempt to comply with the Rules, the only reference of cross-appeal being found in a section of the appellees' answer brief. Here appellees (vendees) have at least made a substantial compliance with our Rules and under § 21–2–1(7) (2), supra, they have done all that they were required to do to perfect the cross-appeal.

 The fact that vendees entitled their cross-appeal "Notice of Cross-Appeal" instead of "Application for Cross-Appeal," as provided by Rule 7(2), is not grounds for dismissal. Johnson v. Johnson, 74 N.M. 567, 396 P.2d 181.

■ Regarding vendors' next point, we hold that vendees have adequately set forth their point on cross-appeal, and further that there is no need to file a counter praecipe where, as here, vendors have already filed a praecipe calling for the complete record. Section 21–2–1(12) (2), N.M. S.A., 1953 Comp.

■ Vendors' last ground for dismissal of the cross-appeal is that to allow the cross-appeal will work an undue hardship on vendors. In view of the fact that vendees' complaint sought a recovery identical to that now sought by the cross-appeal, we see no hardship whatever on vendors. Further, if vendors received the benefits of the improvements to which they were not entitled, there can be no hardship involved in giving vendees the fruits of their labors. This is especially true where vendors have at all times been fully advised as to the taking of the cross-appeal and the substantive point argued therein.

Vendees have appealed from the trial court's conclusion of law No. 8, which awards them $44,000 plus 6% interest per annum on said amount from June 8, 1957. The trial court found the value of the land to be $76,800 at the time the purchase contract was executed, and found the value after vendees had completed the work to be $160,000, a total enhanced value of $83,200. Vendors appeal from the trial court's holding that they were entitled to judgment only for $49,120, the actual cost of the improve-

ments, less an allowance of $5,120 for rent in 1956, or $44,000, plus 6% interest from June 8, 1957, amounting to $17,526.60. Vendees argue that they are entitled to recover the difference between the contract price ($76,800) and the value of the land after completion of the work ($160,000), or a total of $83,200, plus 6% interest per annum on $49,120 from June 8, 1957. Vendees assert as error that: (1) They were not awarded damages for "loss of bargain;" (2) that vendors are not entitled to the allowance of $5,120 for rent in 1956; and (3) that interest should have been computed on $49,120 instead of $44,000.

■ It is a familiar rule in this jurisdiction that damages recoverable by a purchaser, for failure of a vendor to convey, is the difference between the actual value of the land and the price stated in the contract. Johnson v. Nickels, 66 N.M. 181, 344 P.2d 697; Adams v. Cox, 54 N.M. 256, 221 P.2d 555; Pugh v. Tidwell, 52 N.M. 386, 199 P.2d 1001; Conley v. Davidson, 35 N.M. 173, 291 P. 489. See also, 5 Williston on Contracts, Rev.Ed., § 1399, p. 3906; 55 Am. Jur., Vendor and Purchaser, § 555, pp. 948–950; 91 C.J.S. Vendor and Purchaser § 179, pp. 1151–1152.

Vendors argue that the rule announced in the above cited cases is not applicable in the instant case, because those cases were all suits for damages for breach of contract. They contend that since vendees made no election of remedies in the trial court, be-

tween damages for breach of contract or rescission, that vendees cannot recover on their cross-appeal because they would be receiving what amounted to damages for both remedies. Vendors argue that the trial court erred in refusing to compel vendees to make an election of remedies at the trial.

We first note that vendors may not complain of any error of the trial court in refusing to force vendees to select their remedy. Vendors could have asserted this error in their appeal and, since they failed to do so, such argument has been waived and cannot be urged by them in response to the cross-appeal. In addition, such an election of remedies was not required of vendees. In Honaker v. Ralph Pool's Albuquerque Auto Sales, Inc., 74 N.M. 458, 394 P.2d 978, we quoted from Bernstein v. United States, (10 CCA 1958), 256 F.2d 697, where it was stated "the dimensions of the lawsuit are measured by what is proven." We further stated that "it would seem that appellees are entitled to relief in either damages or rescission." We there held that the doctrine of election of remedies is procedural and quoted from Dial Press, Inc. v. Phillips, 23 N.J.Super. 543, 93 A.2d 195:

" 'The doctrine of election of remedies * * * has its foundation in the desire of the law to eliminate vexatious and multiple litigation of causes of action arising out of the same subject matter. * * *' "

See also, 18 Am.Jur., Election of Remedies, § 4.

In State ex rel. Gary v. Fireman's Fund Indemnity Company, 67 N.M. 360, 355 P. 2d 291, we stated:

"We now announce that recovery should be allowed on quantum meruit even though the suit was originally framed on express contract; and that amendment to pleadings be freely allowed to accomplish this purpose at any stage of the proceeding, including considering the pleadings amended to conform to the proof. We are impressed that by this holding we are bringing our procedure into line with the decisions in the federal courts and into harmony with the letter and spirit of our rules and procedure, * * *."

Inasmuch as vendees have always claimed that their recovery should be in the amount of $83,200 and if said improvements did enhance the value of the land in this amount, we cannot see how a double recovery would be received by vendees if such amount were decreed.

Vendors complain that $83,200 should not be awarded to vendees because that amount, over the trial court's award, is due solely to economic appreciation. Vendors rely entirely on Gottwald v. Weeks, 41 N.M. 18, 63 P.2d 537, wherein

this court held that a purchaser was not chargeable with depreciation in the market value of real estate caused by economic conditions. Vendors argue that, by the same token, a purchaser should not be recompensed for land appreciation. This argument is invalid for two reasons. First, we find no evidence which points to the land appreciation being caused by economic conditions. Instead, the only witness testifying on this point stated that land prices had remained stable in the area involved at all times pertinent to the instant case. Second, the manner in which the trial court made findings of fact Nos. 17 and 20 indicates that the trial court believed the price appreciation stemmed directly from the actual expenditure of $49,-120 made by vendees. These findings show that the improvements enhanced the value of the land and accounted for the subsequent appreciation; not that economic factors produced the land value appreciation.

However, assuming that the appreciation was caused by economic factors, we note with approval our decision in Johnson v. Nickels, supra, wherein we upheld the damages awarded by the trial court on the grounds that there was substantial evidence to support the award due to the increase in cattle prices.

Despite our discussion above, we are of the opinion that the trial court arrived at the most equitable decision on the issues involved in the cross-appeal. The improvements on the land enhanced its value by $83,200. The trial court further found that the value of the improvements amounted to $49,120, and that vendees produced 288 bales of cotton with a loan value of $155 per bale, or $44,640. The trial court specifically allowed vendees the value of the improvements, which amount reduced the enhanced value of $83,200 to $34,080. However, the trial court also found that vendees made a profit of $44,-640 (loan value of the cotton), which sum the trial court did not specifically apply against the enhanced value of the land. We believe the trial court did take such figure into consideration because, by applying vendees' profit against the remainder of the enhanced value, vendors are short by $10,000. But by the finding of reasonable rental allowed to vendors of $5,120, the parties are returned closely to the status quo ante. This is the most equitable conclusion under the facts at hand. See, Gottwald v. Weeks, supra; Lutz v. Cunningham, 240 Iowa 1037, 38 N.W.2d 638; 48 A.L.R. 12, supplemented by 68 A.L.R. 137, and supplemental decisions; 55 Am.Jur., Vendor and Purchaser, § 611; 92 C.J.S. Vendor and Purchaser § 602.

The cross-appeal of vendees is hereby denied and the judgment · of the district court is affirmed.

It is so ordered.

**212**

COMPTON, J., concurs.

CARMODY, C. J., specially concurring.

CARMODY Chief Justice (specially concurring).

Although I agree with the opinion insofar as it disposes of the main appeal, I cannot join with the method of disposition of the cross-appeal, and feel that the discussion of the merits of the cross-appeal is not warranted.

This court did not obtain jurisdiction of the cross-appeal, because of the lack of any order of the district court allowing the same. As pointed out in the opinion, this case was filed in 1958. Therefore, under the law then existing, in order to grant jurisdiction to this court it was necessary under the then Rule 21–2–1(5), N.M.S.A. 1953, to file a motion and obtain an order from the trial court allowing an appeal. The cross-appeal rule (§ 21–2–1(7) (2), N. M.S.A.1953) does not expressly provide that an order of the district court be obtained in order to give the supreme court jurisdiction; nevertheless, the rule specifically states "shall make application therefor," and I do not believe that, when 7(2) and the old 5 are considered together, there can be any question but that making "application" contemplated the obtaining of an order. As a matter of fact, "application" means "The act of making a request for something." See Bouvier's Law

Dictionary. Thus the rule must have contemplated the making of a request for an order granting the cross-appeal. In the instant case, there was merely a notice of the cross-appeal, and although this would comply with the rule as it now exists, it was not sufficient in this case.

The cases cited in the main opinion are not authority for the determination that this court has jurisdiction of the cross-appeal, lacking an order granting the same. Contrariwise, in Frederick v. Younger Van Lines, 1964, 74 N.M. 320, 393 P.2d 438, we specifically recognized that an order allowing a cross-appeal under Rule 7(2) was necessary for cases filed prior to March 15, 1961, and a notice of cross-appeal with respect to cases filed thereafter.

To me, this is a jurisdictional question, and substantial compliance as mentioned in the main opinion is not sufficient. Substantial compliance did not satisfy the jurisdictional requirement on an appeal prior to the change of Rule 5, see In re Saiz Estate, 1961, 69 N.M. 18, 363 P.2d 628, nor can it satisfy the jurisdictional requirement with respect to a cross-appeal.

It is fully realized that the main opinion refuses to grant the relief claimed by the cross-appeal. I reach the same result, but on the basis that I do not believe the court can even consider the cross-appeal. Therefore, I feel called upon to express my disagreement, in order to point up the fact

that the main opinion in this case, on the jurisdictional question, is only the opinion of two justices and may not be considered as authority.