615 P.2d 985

**FARMINGTON NATIONAL BANK, Plaintiff,**

v.

**BASIN PLASTICS, INC., a corporation, Defendant,**

v.

**Dorothy FORD, Defendant-Cross-Claimant-Appellee,**

v.

**Herb McNUTT, Defendant-Cross-Claimant-Appellant.**

**No. 12600.**

Supreme Court of New Mexico.

Aug. 22, 1980.

Schuelke, Wolf & Rich, Walter F. Wolf, Jr., Gallup, for plaintiff.

Vidal & Mason, Timothy Vidal, Gallup, for defendant.

## OPINION

FELTER, Justice.

The personal representative of Dorothy Ford, now deceased, defendant, cross-claimant and appellee (Ford) recovered judgment for contribution from Herb McNutt, de-

fendant, cross-claimant and appellant (McNutt). We affirm.

Basin Plastics, Inc., defendant (Basin Plastics), gave Farmington National Bank, plaintiff (Bank), its promissory note for a loan in the principal sum of $56,000.00. McNutt co-signed the note as an accommodation maker and Ford secured payment of the note by a mortgage to the Bank upon real estate which she owned. After an extension of time for payment of the note and after partial payment by Basin Plastics, default was made and the Bank brought suit against Basin Plastics, Ford and McNutt for the balance due on the note and for foreclosure of the Ford mortgage.

McNutt claimed that the extension of time for payment of the note by the Bank was unilateral and without his agreement or waiver of his rights. Without participation or consent of McNutt, Ford compromised, settled and paid the balance of the indebtedness due the Bank on the promissory note. All claims by or counter-claims against the Bank were dismissed with prejudice. It is claimed by Ford that the settlement and the compromised amount paid to the Bank were favorable to the defendants. McNutt's assignments of error are:

(1) The court erred in finding and concluding that he and Ford consented to extensions of time for payment of the note and waived the right to claim they were discharged by the Bank's extensions of time for payment.

(2) The court erred in finding and concluding that the Bank had no obligation to secure payment of the note with any collateral other than the mortgage on Ford's property.

(3) The court erred in finding and concluding that McNutt, as an accommodation maker, was not discharged from liability under various provisions of the Uniform Commercial Code.

(4) The court erred in finding and concluding that Ford paid the Bank under compulsion and not voluntarily, and that McNutt is liable to Ford for

contribution as a result of the payment.

(5) The court erred in finding and concluding that Ford is entitled to interest on the amount of the judgment against McNutt from the date Ford paid the Bank.

Each of McNutt's claims of error will be discussed separately in the order listed.

## POINT I

The promissory note to which McNutt is the accommodation maker, *inter alia*, contains the following recitals:

The makers, endorsers and sureties hereof hereby severally waive protest, presentment, demand and notice of protest and nonpayment in case this note (or any payment due hereunder) is not paid when due, *and they agree to any renewal of this note or to any extension, acceleration, or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral and to the addition of release of any party or person primarily or secondarily liable without prejudice to the holder or notice to makers, endorsers and sureties.* (Emphasis added.)

McNutt relies on a handwritten notation upon the note jacket, "not to be renewed." This notation was made by Michael Dennis, a Bank employee, at the time the note was executed. It was made by Dennis on his own volition and not at the request of Basin Plastics, Ford or McNutt. The notation was never a part of the contract between the Bank and Basin Plastics, Ford or McNutt. In fact, McNutt indicated he had never seen the note jacket bearing the notation "not to be renewed" prior to the time it was shown to him on the witness stand, but later testified that he had witnessed Dennis writing and initialing the notation.

It has been held that an agreement between a payee and maker of a note to extend the time of payment of the note

discharges any co-maker who has not consented to the extension. *American State Bank v. Leaver*, 261 Iowa 124, 153 N.W.2d 348 (1967). Although the Uniform Commercial Code was not in effect when the note in question was executed in Iowa, nevertheless the court stated that the result thereunder would have been the same. Where, as in the case at bar, an accommodation maker by the terms of the note waives all defenses on the ground of any extensions of time, he is held bound to that provision in the note. *Midland-Ross Corporation v. Swartz*, 185 Neb. 484, 176 N.W.2d 735 (1970). While we find no New Mexico decisions precisely on point, we agree with and adopt the rule set forth in *Midland-Ross Corporation v. Swartz*. Clearly, McNutt, in the note itself, waived any objections to extensions in the time of payment granted by the Bank, and objection now to such extensions is without merit.

### POINT II

■ McNutt argues that he had an agreement with the Bank that the Bank would take and secure assignments of accounts receivable due Basin Plastics in amounts in excess of the note balance as collateral, but that the Bank failed to do so. A memorandum in McNutt's handwriting of Dennis' intentions with respect to the accounts receivable indicated that Dennis expected pledges of government contracts in the sum of $101,000.00, plus additional collateral in the Gallup area. The note signed by McNutt did not either expressly or impliedly require the Bank to take or perfect any security at all for the note. The note makes no reference to collateral except to consent to "exchange or release of collateral." McNutt argues that he had an oral agreement with the Bank that it would secure and perfect the accounts receivable that were due to Basin Plastics. The purported oral agreement is in conflict with the written note which consents to an exchange or release of collateral by the Bank. If a release of collateral by the Bank would

afford no valid defense to the note, then a failure to secure and perfect the accounts receivable as collateral could not stand as a defense either.

Even if the accounts receivable had been secured and perfected as collateral, the Bank at any time thereafter under the terms of the note could have released such accounts receivable as collateral. With the option to release collateral in the Bank, to hold the Bank to such a purported oral agreement would be an idle and futile act. Moreover, Section 55–2–202, N.M.S.A.1978, of the Uniform Commercial Code, provides in pertinent part as follows:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented: . . . .

The parol evidence rule applicable to written contracts generally is also applicable to bills and notes. This rule is so universal that citation of the vast number of cases from the great majority of states would serve no useful purpose.

### POINT III

In addition to his position that he should be discharged from liability as discussed in Points I and II, *supra*, McNutt also asserts that he was entitled to be discharged by the provisions of Sections 55–3–603(2) and 55–3–605(1)(b), N.M.S.A.1978. Those provisions of the law are set out below, to wit:

*Section 55–3–603(2)*

Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee. (Cross reference omitted.)

*Section 55–3–605(1)(b)*

(1) The holder of an instrument may even without consideration discharge any party:

.    .    .    .    .

(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

■ Under the quoted provisions of the law, the action of the Bank in compromising and settling the note balance amounted to a complete discharge of all parties, including McNutt, insofar as the Bank was concerned. The Bank did not thereby discharge the claim of contribution resulting to Ford and against McNutt. Ford's right to contribution from McNutt arose because of the discharge of their common obligation by Ford.

The legal rationale for contribution is set out in the New Mexico case of *Thomas v. Malco Refineries,* 214 F.2d 884 (10th Cir. 1954). The pertinent language in that case is as follows:

> On the other hand, contribution does not arise out of contract, but is an obligation imposed by law, and rests on the principle that, when the parties stand in aequali jure, the law requires equality, which is equity, and that all should contribute equally to the discharge of the common liability. (Footnote omitted.)

*Id.* at 885.

Thus, in *Jackson v. Cupples,* 239 Md. 637, 212 A.2d 273 (1965) where one joint obligor on a note discharged their mutual obligation, he was entitled to contribution from the other obligor. And in *Nelms v. Chazanow,* 404 S.W.2d 359 (Tex.Civ.App.1966), it was held that a cause of action for contribution by a maker of a promissory note against his co-maker accrued at the time of the maker's payment of the unpaid balance.

## POINT IV

■ Ford's property was mortgaged to the Bank to secure payment of the promissory note. When the note was not paid when due, the Bank demanded payment of Basin Plastics, Ford and McNutt. The Bank instituted suit against all three when payment was not made in response to the demand. Ford was obligated to pay the Bank or in the alternative to suffer a foreclosure upon her property. The claim that when Ford compromised and settled the note she was not "under any compulsion whatsoever", but was acting voluntarily ignores her mortgage to the Bank and the Bank's foreclosure suit against her. If such facts do not amount to compulsion, then only the use of a gun may be deemed to constitute compulsion. McNutt's argument that Ford acted voluntarily is specious.

■ Admittedly, a voluntary payment which one is not under legal obligation to make does not give a right of action against a co-obligor for contribution, but where a payment is made under a legal and fixed obligation, the converse is true. *McLochlin v. Miller,* 139 Ind.App. 443, 217 N.E.2d 50 (1966). Moreover, a payment made for one's own protection as soon as the obligation becomes due and the liability of the co-obligors is fixed is, in legal contemplation, compulsory and not voluntary. *Zontelli Brothers v. Northern Pacific Railway Co.,* 263 F.2d 194 (8th Cir. 1959). That case which was tried in the United States District Court for the District of Minnesota, provides in pertinent part:

> The general rule is that before there can be contribution it must be demonstrated that the payment made by the one seeking such relief was not voluntary, (Citation omitted.) however, the payment must be compulsory only in the sense that the party paying was under legal obligation to do so. (Citation omitted.) and it is not necessary that the claim be reduced to judgment before the party paying is entitled to contribution, (Citations omitted.)

*Id.* at 199.

While we have no New Mexico decisions bearing upon voluntary vis-a-vis compulso-

ry payment by one co-obligor supporting a right of contribution against the other obligor, we adopt the rule and language set forth in *Zontelli*. None of the defenses to the promissory note or to a discharge of liability therefrom raised by McNutt has merit. He was discharged from liability on the note only by the compromise and settlement made by Ford under compulsion. That compromise and settlement resulted in a right to contribution from McNutt and in favor of Ford.

## POINT V

■ The only remaining assignment of error by McNutt relates to the time interest commenced accruing on Ford's judgment for contribution against him. McNutt claims that such interest should be allowed only from the date judgment was entered against him and in favor of Ford. Ford contends that interest should be allowed on the judgment commencing as of the date she made payment to the Bank on the compromise and settlement.

The amount of contribution to which Ford is entitled was concluded by the trial court to be one-half of the amount paid by Ford to the Bank. That amount was fixed and certain and partook of none of the attributes of an unliquidated amount.

In the case of *Burran v. Dambold*, 422 F.2d 133 (10th Cir. 1970), the court stated in part as follows:

It is unquestionably the law in New Mexico that if an obligation arises from contract and the amount of the obligation is a matter of mere calculation, prejudgment interest may be allowed in a suit on the contract. *Allsop Lumber Co. v. Continental Casualty Co.*, 73 N.M. 64, 385 P.2d 625; *O'Meara v. Commercial Insurance Company*, 71 N.M. 145, 376 P.2d 486.

*Id.* at 136.

*See also Butler v. Scott*, 417 F.2d 471 (10th Cir. 1969); *Keeth Gas Co., Inc. v. Jackson Creek Cattle Co.*, 91 N.M. 87, 570 P.2d 918 (1977); *Montgomery v. Cook*, 76 N.M. 199, 413 P.2d 477 (1966).

In cases involving contribution in other jurisdictions, likewise it has been held that the date of payment of a joint liability is the proper time from which interest will accrue on the money paid in favor of the joint obligor making the payment. *Case v. McKinnis*, 107 Or. 223, 213 P. 422 (1923); *Edwards v. Ely*, 110 Pa.Super. 509, 16 A. 360 (1933); *Faires v. Cockrill*, 88 Tex. 428, 31 S.W. 190 (1895); *Employers Mut. Liability Ins. Co. v. Derfus*, 259 Wis. 489, 49 N.W.2d 400 (1951); *Bushnell v. Bushnell*, 77 Wis. 435, 46 N.W. 442 (1890).

All assignments of error being without merit, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

EASLEY and PAYNE, JJ., concur.